IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| DENNIS KOYLE; CHARLES K. TURNER; and THE HARRIS RANCH, on Behalf of Themselves, and all Others Similarly Situated, | ) ) ) ) | Case No. CV-01-286-S-BLW |
| | ) | **MEMORANDUM** |
| Plaintiffs, | ) ) | **DECISION AND ORDER** |
| | ) | |
| v. | ) | |
| | ) | |
| LEVEL 3 COMMUNICATIONS, INC., a Delaware Corporation; LEVEL 3 COMMUNICATIONS, LLC, a Delaware Limited Liability Corporation; and LEVEL 3 TELECOM HOLDINGS, a Delaware Corporation, | ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## INTRODUCTION

The Court has before it a motion for class certification filed by plaintiffs. The Court heard oral argument on October 20, 2005, and received additional briefing on November 8, 2005. The motion is now at issue. For the reasons expressed below, the Court will certify a class of Idaho land owners, and will transfer the Wyoming claims to Wyoming.

Memorandum Decision & Order -- page 1

## ANALYSIS

The plaintiffs, Dennis Koyle, Charles Turner, and the Harris Ranch, filed this class action suit alleging that defendant Level 3 Communications[1] improperly laid fiber optic cable over their property, along a railway easement, without their permission. The plaintiffs have alleged four counts: (1) trespass, (2) unjust enrichment, (3) slander of title, and (4) declaratory relief. They seek monetary damages and an injunction prohibiting Level 3 from operating or maintaining the cable.

Plaintiffs have filed a motion for class certification seeking to certify a class defined as follows: All owners of land in Idaho and Wyoming that underlies or is adjacent to a railroad right-of-way within which defendants own, operate or use fiber optic cable.[2] The Court will analyze first whether a class of Idaho land owners is appropriate, and will then examine the Wyoming claims.

## 1.     Idaho Land Owners

The plaintiffs have the burden of establishing whether the proposed class satisfies the four requirements of Rule 23(a):  (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.  *Hanlon v. Chrysler Corporation*,

---

[1]  The Court will refer to the Level 3 defendants collectively as "Level 3."

[2]  Excluded from the class are railroads, the defendants, all state and federal governments and their agencies, any Indian tribe, and the trial judge.

150 F.3d 1011 (9th Cir. 1998).  The prerequisite of numerosity is satisfied if "the class is so large that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  There is no dispute here that this requirement is met.

A class has sufficient commonality "if there are questions of fact and law which are common to the class."  Fed. R. Civ. P. 23(a)(2).  The commonality preconditions of Rule 23(a)(2) are less rigorous than the companion requirements of Rule 23(b)(3).  *Hanlon*, 150 F.3d at 1019.  Indeed, Rule 23(a)(2) has been construed "permissively."  *Id*.  All questions of fact and law need not be common to satisfy the rule:  "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."  *Id*.

Here, plaintiffs' basic claim is that Level 3 laid fiber optic cable over their property without their permission.  That claim is common to all plaintiffs and all members of the proposed class.  This establishes commonality under the permissive standard of Rule 23(a)(2).

The typicality prerequisite of Rule 23(a) is fulfilled if "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed.R.Civ.P. 23(a)(3).  Under Rule 23(a)(3), "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members;

they need not be substantially identical." *Hanlon,* 150 F.3d at 1020.  Here, the

named plaintiffs all own land in fee simple that is subject to a Union Pacific

easement.  Level 3 has installed, and is operating, a fiber optic cable within these

easement right-of-ways, but did not obtain the consent of the plaintiffs.  The named

plaintiffs are thus in the same position as the proposed class members, and will be

seeking the same relief.  Thus, the typicality requirement is satisfied.

The fourth requirement of Rule 23(a) is that "the representative parties will

fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).

To satisfy constitutional due process concerns, absent class members must be

afforded adequate representation before entry of a judgment which binds them.

*Hanlon*, 150 F.3d at 1020.  Resolution of two questions determines legal adequacy:

(1) do the named plaintiffs and their counsel have any conflicts of interest with

other class members and (2) will the named plaintiffs and their counsel prosecute

the action vigorously on behalf of the class?  *Lerwill v. Inflight Motion Pictures,*

*Inc*., 582 F.2d 507, 512 (9th Cir.1978).

Here, the resolution of these two questions leads to a conclusion that

plaintiffs' counsel will provide adequate representation.  No conflicts of interest

have been identified, and the Court's experience with counsel to this points shows

that counsel will vigorously prosecute this case.

Memorandum Decision & Order -- page 4

In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed.R.Civ.P. 23(b)(1), (2) or (3).  *Hanlon*, 150 F.3d at 1022.  Rule 23(b)(2) requires a showing that Level 3 "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

Here, plaintiffs alleged that Level 3 violated their ownership rights by laying cable on their property without their consent.  In essence, they allege that Level 3 acted "on grounds generally applicable to the class," hence making certification under Rule 23(b)(2) appropriate.

Plaintiffs also seek certification pursuant to Rule 23(b)(3), which requires that common questions must "predominate over any questions affecting only individual members," and that the class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 608 (1997).  This analysis presumes the existence of common issues of fact or law; thus, the presence of commonality

alone is not sufficient to fulfill Rule 23(b)(3).  *Hanlon*, 150 F.3d at 1022.  In contrast to Rule 23(a)(2), Rule 23(b)(3) focuses on the relationship between the common and individual issues.  *Id*.

Level 3 asserts that individual issues predominate.  For example, the ownership interest of each class member depends on the conveyance instrument held by that member – the member's interest cannot be determined unless the instrument is examined.  A separate examination of each deed will cause individual issues to predominate over common issues, Level 3 argues.  As another example, Level 3 points to damages, alleging that each class member suffered unique injury, and will accordingly need an individualized assessment of damages.  Level 3 asserts that these individual issues predominate over any common issues.

The Court disagrees for two reasons.  First, there are substantial common issues.  Second, the individual issues may be much less overwhelming once the common issues are resolved.

The common issues arise in part because the vast bulk of Union Pacific's ownership interest in Idaho comes from the 1875 General Right-of-Way Act.  At oral argument, plaintiffs' counsel exhibited a map, showing that almost all of Union Pacific's ownership interest in Idaho was obtained under the 1875 Act.

If the 1875 Act grants fee simple ownership to Union Pacific, the plaintiffs

agree that they have no claim.  Thus, the threshold issue in this case – whether the 1875 Act grants fee simple ownership to Union Pacific – is common to almost all class members and, depending on how it is resolved, could eliminate later consideration of many individual issues.

If the Court finds that Union Pacific holds something less than a fee simple right, the Court must then determine the nature of that interest and whether it gave Union Pacific the right to grant a license to Level 3 to use the right-of-way to lay cable.  These are additional common issues.

The damage issues also provide some common ground.  The plaintiffs are not seeking individual damages, but are rather seeking common damages based on the per-mile value of the allegedly improperly occupied fiber optic corridor.  If, after determination of the common liability issues, a class member wants an individualized determination of damages, the member will be free to opt-out of the class.

This very issue was faced in *Fisher v. Virginia Electric and Power Co.,* 217 F.R.D. 201 (E.D.Va. 2003), where plaintiffs sought to certify a class seeking relief for defendant's conduct in laying fiber optic cable over their property without their consent.  There, the court noted that some class members may want an individualized measure of damage, rather than a "per-foot" value.  *Id.* at 225-26.

This was not fatal to the class certification, however, because the court recognized

its authority to grant what it called "composite certification." *Id*. at 214. The

Court explained that a composite certification involved certifying the class for

liability and equitable remedy issues under Rule 23(b)(2), and for damages under

Rule 23(b)(3). The composite certification "avoids the due process problems of

certifying the entire case under Rule 23(b)(2) by introducing the Rule 23(b)(3)

protections of personal notice and opportunity to opt out for the damages claims."

*Lemon v. Int'l Union of Operating Eng'rs.,* 216 F.3d 577, 581 (7th Cir. 2000). The

Ninth Circuit allows the same procedure, calling it "hybrid certification." *See*

*Smith v. Univ. of Wash. Law School*, 233 F.3d 1188, 1196 (9th Cir. 2000).

        The Court finds that hybrid certification would be appropriate here. If class

members do not accept a common measure of damages, they will be free to opt out

of the class and pursue an individualized assessment of their damages. *See Staton*

*v. Boeing,* 327 F.3d 938, 947-48 (affirming hybrid settlement class where equitable

relief was certified under Rule 23(b)(2) and damages under Rule 23(b)(3)).

        It is not an easy call to determine if common issues predominate over

individual issues in this case. Level 3 has a persuasive argument that individual

issues could predominate at some point. However, at this stage of the litigation,

there are substantial common issues that once resolved, may simplify the

individual issues.  Having examined all the Rule 23(b)(3) factors for determining whether common issue predominate, the Court finds that common issues predominate over individual issues.

Finally, the Court finds that a class resolution is "superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  This determination "necessarily involves [comparing a class resolution with] alternative mechanisms of dispute resolution" such as "individual claims." *Hanlon*, 150 F.3d at 1023.  If this action was not certified as a class, each plaintiff would have to establish his or her own claim.  This repetitive process, involving many hundreds, and perhaps thousands, of plaintiffs, would "unnecessarily burden the judiciary." *Id*.  Of course, that burden may not materialize if most plaintiffs simply dropped the litigation because they lacked the resources to proceed.  If the alternatives to a class resolution are massive filings or a mass surrender, the class resolution is clearly superior under Rule 23(b)(3).

The Court therefore finds that the proposed class of Idaho land owners meets the requirements of Rule 23(b)(2) and (b)(3).  This Court has the authority, and exercises it here, to make the class certification conditional under Rule 23(c)(1)(C). That provision gives the Court authority to modify its certification decision at any time before a final decision on the merits. *Vizcaino v. United States District Court*

Memorandum Decision & Order -- page 9

*for the Western District of Washington*, 173 F.3d 713 (9th Cir.) , *as amended*, 184 F.3d 1070 (9th Cir. 1999).  For example, discovery may reveal facts that warrant changes in the class, such as the division of the class into subclasses or other modifications.  *See Staton,* 327 F.3d at 956(affirming the authority of the district court to modify its certification order by establishing subclasses).

Moreover, the Ninth Circuit has stated that "the main reason for the tentative nature of class status determinations is that they generally involve considerations that are closely tied to the factual and legal issues of the case."  *Officers for Justice v. Civil Service Commission*, 688 F.2d 615 (9th Cir. 1982).  That is true in this case.  While Level 3's responses to plaintiffs' class certification motion sought legal and factual rulings on various issues, the Court refuses to resolve these important matters in the context of a class certification motion.  *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974) (holding that nothing in Rule 23 "gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action.").  As the Ninth Circuit recognized in *Officers for Justice*, the class certification can be made conditional and thereafter modified if legal rulings so require.

## 2.   <u>Wyoming Land Owners</u>

The plaintiffs seek to certify a separate class of Wyoming land owners. They

assert that "[i]f a Wyoming class is certified, that class can also proceed here or it can be transferred to the District Court for Wyoming." *See Plaintiffs' Response Brief filed November 3, 2005,* at p. 2.

The Court agrees with plaintiffs that ultimate resolution of any Wyoming class claims should occur in Wyoming. But the Court disagrees that this Court should first make the class certification decision, and then transfer the case. This Court is very reluctant to impose a class certification decision on another court. While one court may be able to handle complex litigation, another court may have fewer resources or other factors making it impossible.

Thus, the Court will transfer all of the Wyoming claims to Wyoming without making any decision on the class certification of those claims. The Court will now turn to an analysis of its venue determination.

The resolution of the Wyoming claims could require more analysis of state law – more precisely, Wyoming law in the case of the Wyoming class. As plaintiffs' counsel candidly admitted at oral argument, determining the railroad's interest in Wyoming lands will be a more complicated inquiry, because the railroad obtained more of its interest in Wyoming lands from private deeds and individual condemnations than it did in Idaho. This means that state law will play a larger role in the Wyoming litigation. Obviously, the Wyoming federal district court

would be better able to resolve claims involving Wyoming law.

Moreover, any resolution of the scope of the 1875 Act, necessary to Idaho land owners, will have very little carryover to the Wyoming class since much of the railroad's interest in Wyoming land was obtained under the Act of 1862. Thus, there is scant benefit in proceeding with both classes here because the decisions made in one case will have very little precedential effect in the other.

Given the separate nature of the Wyoming and Idaho claims, it makes more sense to carve off the Wyoming claims and transfer them to the District of Wyoming. Moreover, "[t]here is a local interest in having localized controversies decided at home." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947). The impact of the Wyoming class litigation will fall entirely in Wyoming, indicating that venue is proper there. *See Southern Utah Wilderness Alliance v. Norton*, 315 F.Supp.2d 82, 89 (D.C.D.C. 2004) (holding that venue was proper in Utah in part because "the dispute in this instance will have the greatest impact on the citizens of Utah").

The other venue considerations all favor Wyoming. *See* 28 U.S.C. § 1404(a); *Gherebi v. Bush*, 352 F.3d 1278, 1302 (9th Cir. 2003). The Wyoming class litigation could have been brought there first; logistical considerations warrant suit in Wyoming; Idaho has no interest in resolving claims of Wyoming

landowners; and the Wyoming forum will have a substantial interest in resolving the claims of its own citizens.

While it is true that a plaintiff's choice of forum must be given considerable weight in the § 1404(a) venue analysis, that interest is entitled to only minimal consideration if the operative facts have not occurred in the forum and the forum has no interest in the parties or subject matter. *Lou v. Belzberg,* 834 F.2d 730, 739 (9th Cir. 1987). Here, Idaho has no interest in the Wyoming class litigation, and the operative facts did not occur here. Thus, plaintiffs' choice of forum in this case is entitled to minimal consideration, and is substantially outweighed by other factors directing venue in Wyoming.

The Court will therefore transfer the Wyoming class claims to the United States District Court for the District of Wyoming. The Court will consider recommendations from counsel as to how best to effect the transfer. Counsel shall file short briefs on that issue within five days from the date of this decision.[3]

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion for class

---

[3] Plaintiff Harris Ranch owns property in Wyoming but not Idaho. The other two named plaintiffs, Dennis Koyle and Charles Turner, own land in Idaho but not Wyoming. It is the claims of Harris Ranch that must be transferred to Wyoming.

certification (Docket No. 21) is GRANTED IN PART AND DENIED IN PART.
It is granted to the extent it seeks to include Idaho land owners but is denied in all
other respects, without prejudice to the right of Wyoming plaintiffs to seek class
certification in Wyoming Federal District Court.

IT IS FURTHER ORDERED, that the following class of plaintiffs is hereby
certified pursuant to Rule 23(b)(2) & (b)(3):  All owners of land in Idaho that
underlies or is adjacent to a railroad right-of-way within which defendants own,
operate or use fiber optic cable.[4]

IT IS FURTHER ORDERED, that this class is conditionally certified under
Rule 23(c)(1)(C), as explained in the Memorandum Decision accompanying this
Order.

IT IS FURTHER ORDERED, that the certification of liability and equitable
remedy issues is pursuant to Rule 23(b)(2) and the certification of damage issues is
pursuant to Rule 23(b)(3).

IT IS FURTHER ORDERED, that co-lead plaintiffs, Dennis Koyle and
Charles K. Turner, are hereby appointed as class representatives pursuant to Rule
23(g).

---

[4]  Excluded from the class are railroads, the defendants, all state and federal governments
and their agencies, any Indian tribe, and the trial judge.

Memorandum Decision & Order -- page 14

IT IS FURTHER ORDERED, that the law firm of Zelle, Hoffman, Voelbel, Mason & Gette LLP in Minnesota is appointed as lead counsel for the class, with the law firm of Hawley, Troxell, Ennis & Hawley LLP in Boise acting as Local Counsel.

IT IS FURTHER ORDERED, that counsel shall meet together and agree on the form of notice required under Rule 23(c)(2).

IT IS FURTHER ORDERED, that counsel shall submit short briefs within five (5) days from the date of this decision recommending the best method of transferring the Wyoming claims to the Federal District Court of Wyoming.

IT IS FURTHER ORDERED, that the motion for leave to file supplemental memorandum (Docket No. 118) is GRANTED.

DATED:  **December 1, 2005**

B. LYNN WINMILL
Chief Judge
United States District Court