Brad P. Miller, ISB No. 3630
HAWLEY TROXELL ENNIS & HAWLEY LLP
877 Main Street, Suite 1000
P.O. Box 1617
Boise, ID 83701-1617
Telephone: (208) 344-6000
Facsimile: (208) 342-3829
Email:  bpm@hteh.com

John B. Massopust
Dan Millea
ZELLE HOFMANN VOELBEL & MASON LLP
500 Washington Avenue South, Suite 4000
Minneapolis, MN  55415
Telephone: (612) 339-2020
Facsimile: (612) 336-9100

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| DENNIS KOYLE, CHARLES K. TURNER, and THE HARRIS RANCH, on behalf of themselves and all others similarly situated, ) ) ) | Case No. CIV-01-0286-S-BLW |
| ) | |
| Plaintiffs, ) | |
| ) | **PLAINTIFFS' BRIEF IN** |
| vs. ) | **SUPPORT OF THEIR MOTION** |
| ) | **FOR SUMMARY JUDGMENT ON** |
| LEVEL 3 COMMUNICATIONS, INC., ) | **THE PROPER MEASURE OF** |
| a Delaware Corporation, LEVEL 3 ) | **DAMAGES** |
| COMMUNICATIONS, LLC, a Delaware Limited ) | |
| Liability Corporation, and LEVEL 3 TELECOM ) | |
| HOLDINGS, INC., a Delaware Corporation, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. ii

ISSUE PRESENTED ......................................................................................................... 1

SUMMARY OF THE ARGUMENT ..................................................................................... 1

SUMMARY JUDGMENT STANDARD ................................................................................ 3

ARGUMENT ..................................................................................................................... 4

I.   The Measure of the Class Members' Compensatory Damages for Level 3's
     Trespass Is the Corridor Value of the Telecommunications Corridor
     Calculated on a Uniform Per-Mile Basis. ............................................................. 4

     A.   In Idaho, the damages for trespass are tailored to the property rights
          that are taken or injured. ............................................................................ 4

     B.   The value of the corridor in which Level 3 trespassed is subject to a
          well established, uniform per-mile value for the entire corridor. ........................ 5

          1.   The Level 3 1998 Agreement uses a uniform Corridor
               Valuation methodology. ...................................................................... 5

          2.   The Corridor Value methodology has been used repeatedly in
               other class action trespass cases, as exemplified in the *VEPCO*
               case. ................................................................................................. 6

          3.   Idaho law should be applied by the Court, not inapt decisions
               from other states as previously contended by Level 3. ....................... 8

II.  In Idaho, Compensatory Damages for Unjust Enrichment is the Fair and
     Reasonable Value of the Use and Occupation of the Corridor; and, at the
     Court's Discretion, Level 3 May Be Required to Disgorge Some or All of Its
     Profits to the Class. ............................................................................................ 10

     A.   The Measure of Class Members' compensatory damages for Level 3's
          unjust enrichment is the Corridor Value, calculated on a uniform, per-
          foot basis for each class member's pro-rata share. .................................. 10

     B.   Subject to this Court's discretion, when determining the issue of
          liability,  Level 3 should be required to disgorge its profits to Class
          Members for the use of their corridor-lands. .......................................... 12

CONCLUSION ................................................................................................................. 13

## **TABLE OF AUTHORITIES**

**Page**

<u>**Cases**</u>

*Bair v. Barron*,
    539 P.2d 578 (Idaho 1975)......................................................................... 11

*Basic American, Inc. v. Shatila*,
    992 P.2d 175 (Idaho 1999)..............................................................3, 12-13

*Boggs v. Seawell*,
    205 P. 262, 263 (Idaho 1922)..................................................................... 4

*Child v. Blaser*, 727 P.2d 893(Idaho App. Ct. 1986)..................................... 11

*Exxon Pipeline Co. v. Hill*, 788 So. 2d 1154, 1165 (La. 2001) ...................... 8

*Exxon Pipeline Co. v. Zwahr*,
    88 S.W.3d 623 (Tex. 2002).......................................................................... 8

*Fisher v. Va. Elec. & Power Co.*,
    217 F.R.D. 201 (E.D. Va. 2003) ................................................................. 6

*Great Plains Equip., Inc. v. Nw. Pipeline Corp.*,
    132 Idaho 754, 979 P.2d 627 (1999).......................................................... 11

*Hanson v. Seawell*,
    204 P. 660, 661 (Idaho 1922)...................................................................... 4

*Hebert v. Doyle Land Servs., Inc.*,
    No. 2:00 CV 1851, slip op. (W.D. La. Mar. 5, 2002) ................................. 9, 10

*Hixon v. Allphin*,
    281 P.2d 1042 (Idaho 1955)........................................................................ 11

*Holladay v. Lindsay*,
    152 P.3d 638 (Idaho Ct. App. 2006)........................................................... 13

*Hossner v. Idaho Forest Indus., Inc.*,
    835 P.2d 648, 650-51 (Idaho 1992...............................................................3

*Lee v. Boise Development Co.*,
    122 P. 851 (Idaho 1912)..........................................................................4-5

*Loomis & McGrew v. Richwell Resources, Ltd.*
    944 F.2d 908, 1991 WL 180075 (9th Cir. Sept. 16, 1991) ..............................4

*Lutyen v. Ritchie,*
218 P. 430 (Idaho 1923).................................................................... 10

*Mock v. Potlatch Corp.,*
786 F. Supp. 1545 (D. Idaho 1992) ................................................... 4

*Northwest Pipeline Corp. v. 95.02 Acres of Land, more or less, in Power County, Idaho,*
2003 WL 25768634, at *2 (D. Idaho Dec. 19, 2003) ........................ 9

*Raven Red Ash Coal Co. v. Ball,*
39 S.E. 2d 231 (Va. 1946)................................................................ 12

*Schweizer v. Level 3 Communications, Inc.,*
No. 99-CV-1323  5th Div. (Boulder Cty. Dist. Ct. Nov. 25, 2002).................. 10

*Scott v. Gubler,*
511 P.2d 258, 259 (Idaho 1973) ........................................................ 4

*Smith v. Smith,*
511 P.2d 294 (Idaho 1973)............................................................... 11

*State ex rel. Symms v. City of Mountain Home,*
493 P.2d 387 (Idaho 1972)................................................................ 9

*The Highlands, Inc. v. Hosac,*
936 P.2d 1309 (Idaho 1997).............................................................. 4

*Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Savs. Ass'n,*
322 F.3d 1039 (9th Cir. 2003). ......................................................... 3

*Tsuboi v. Cohn,*
231 P. 708 (Idaho 1925).................................................................. 10

*Uhl v. Thoroughbred Technology and Telecommunications, Inc.*
No. IP00-1232-C-B/S, 2001 WL 987840 (S.D. Ind. Aug. 28, 2001),
*aff'd,* 309 F.3d 978 (7th Cir. 2002).....................................................6

*Young v. Extension Ditch Co.,*
89 P. 296, 29 (Idaho 1907)................................................................ 4

## **Other Authorities**

4 *Nichols on Eminent Domain* § 12.03 (3d ed. 2003)....................................9

Federal Rule of Civil Procedure 56(c)(2) .................................................3

RESTATEMENT (THIRD) OF LAW OF RESTITUTION AND UNJUST ENRICHMENT § 40 (2010)..... 11, 13

The American Law Institute, *87th ALI Annual Meeting May 17-19, 2010*,
http://2010am.ali.org/actions.cfm (last visited Oct. 7, 2010) .......................................... 11

The American Law Institute Publications Catalog, Restatement of the Law Third,
Restitution and Unjust Enrichment,
http://www.ali.org/index.cfm?fuseaction=publications.ppage&node_id=46
(last visited Oct. 7, 2010)............................................................................................... 11

## ISSUE PRESENTED

Level 3 entered into an agreement to use Union Pacific's established railroad corridors for its fiber optic installations.  These installations traverse lands owned by the Class Members. The Class Members neither gave permission nor were paid for this use of the established corridor land.  Assuming Level 3 has trespassed on private property, is the proper measure of compensatory damages based on the value established by the market for the use of an existing corridor for a new telecommunications system?

## SUMMARY OF THE ARGUMENT

Boiled down to its essence, Plaintiffs' contention in this law suit is that when Level 3 used the Union Pacific railroad rights of way as a telecommunications corridor it paid the wrong people.  Level 3 paid the railroad which, for the segments at issue in this class action, had only an easement for railroad purposes, and so was not the owner of the subsurface and had no rights in the surface other than the right to operate a railroad.  Level 3 did not pay the landowners who owned the lands in fee title, and who retained the exclusive right to authorize any use of the corridor land for purposes beyond that of running a railroad.  As a result, Level 3 trespassed on the Class Members' ownership interests in the corridor and, through its use of the wrongly-installed fiber optic cable, was unjustly enriched.[1]

Under Idaho law, when a party has trespassed on land in the manner done by Level 3, the rule is that the private owner is entitled to payment of the market value of the private property that was destroyed or used by the tortfeasor.  Here, under rules applicable for a trespass, the damages that flow from these tortious actions are measured by the comparable value paid for the

---

[1] The parties are separately submitting motions for summary judgment on the issues relating to the relative scope of the parties' property interests in the corridor land used by Level 3, which will determine whether or not Level 3 is liable in this case.  This motion focuses on the proper measure of compensatory damages, and thus assumes that liability will already be established.

installation or usage of telecommunications corridors in existing rights of way, known as "Corridor Value."

Existing telecommunications corridor agreements provide specific comparable values for telecommunications corridors that have been installed in pre-existing corridors. These values turn on the distance of the corridors, measured in miles or linear feet. Agreements may provide for a substantial initial payment or for minimal initial payments and substantial annual rents, as does Level 3's agreement with Union Pacific. *See* Affidavit of Troy J. Seibert in Support of Motion for Class Certification, Doc. No. 41, ("Seibert Aff."), Ex. E. Regardless of the price, the valuation is always uniform from point to point along a corridor, and does not change when the value of the land adjoining the corridor changes. *Id.* In other words, Level 3's payment to the railroad, and its revenue and profits from the use of a cable installed through a $7,000 per acre property is no different from the payment, revenues and profits for the same length of cable installed through a $2,000 per acre property. Level 3 is not using a field or industrial park or a subdivision—its trespass is exclusively on an already-established rail corridor. Accordingly, because Level 3 squatted on pre-established corridors owned by individual Class Members, the Class Members' share of these damages is determined by the number of feet of the right of way they own in the already-established corridor, and not the value of class members' adjoining parcels.

This approach to valuing the compensatory damages in a trespass case has been used in other cases, as explained, *infra*, §IB (*see* discussion of the "*VEPCO*" case and analysis used by expert Umbeck in that case). In short, this unlawful tenant owes the owners compensatory damages which are consistent with the nature of the tortious conduct.

For these reasons and as explained below, the Class Representatives request the Court rule that the proper measure of compensatory damages in this case is the Corridor Value of the telecommunications corridor under either the trespass or unjust enrichment causes of action and, if the Court finds the evidence shows that Level 3's tortious actions were knowing, the class is entitled to a disgorgement of all Level 3's gains as a result of wrongfully installing its fiber optic system in the corridor.  In each of these instances, each Class Member's share of the damages shall be determined by the number of linear feet of railroad corridor which traverse each class member's property.

## SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c)(2), summary judgment is warranted when there are no disputed issues of material fact and the issue is one of law.  Summary judgment is a proper means to dispose of issues that present only questions of law.  *Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Savs. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2003)  "A determination of the proper measure of damages is a question of law."  *Basic American, Inc. v. Shatila*, 992 P.2d 175, 194 (Idaho 1999) (citing *Hossner v. Idaho Forest Indus., Inc.*, 835 P.2d 648, 650-51 (Idaho 1992).  Defendants do not dispute that the measure of compensatory damages is a purely legal issue.  Thus, summary judgment on the proper measure of Class Members' compensatory damages is appropriate.

## ARGUMENT

I.    **The Measure of the Class Members' Compensatory Damages for Level 3's Trespass Is the Corridor Value of the Telecommunications Corridor Calculated on a Uniform Per-Mile Basis.**

     A.    **In Idaho, the damages for trespass are tailored to the property rights that are taken or injured.**

A trespass occurs when a defendant invades land in a way that interferes with the owner's right of exclusive possession.  *Mock v. Potlatch Corp.*, 786 F. Supp. 1545, 1548 (D. Idaho 1992). Idaho tailors the compensatory damages for a trespass to fit the injury to the plaintiff that results from being denied his or her right of exclusive possession.  If the land or property is taken or the value is totally destroyed, the plaintiff is entitled to the cash value of the land at the time of the taking or destruction.  *Young v. Extension Ditch Co.*, 89 P. 296, 298 (Idaho 1907).  If the land is used and in the course of the use is injured, the plaintiff is entitled to the rental value during the period of use and the cost of repair.  *Highlands, Inc. v. Hosac*, 936 P.2d 1309, 1314 (Idaho 1997); *Scott v. Gubler*, 511 P.2d 258, 259 (Idaho 1973).

Level 3 interfered with the owners' right of exclusive possession for non-railroad uses when it installed its fiber optic system.  When a defendant trespasses under these circumstances, by using a plaintiff's land without authority from the plaintiff, "[t]he measure of damages for trespass is the reasonable rental value of the property."  *Loomis & McGrew v. Richwell Resources, Ltd.*, 944 F.2d 908, 1991 WL 180075, at *1 (9th Cir. Sept. 16, 1991) (citations omitted); *see also Gubler*, 511 P.2d at 259 (defendant who occupied plaintiff's land owed damages based on the rental value of the land); *Boggs v. Seawell*, 205 P. 262, 263 (Idaho 1922) (plaintiff entitled to reasonable rental value as pasture where defendant trespassed by grazing sheep on the land); *Hanson v. Seawell*, 204 P. 660, 661 (Idaho 1922) (plaintiff entitled to rental value of land for the use to which it would ordinarily and reasonably be put); *Lee v. Boise Dev.*

*Co.*, 122 P. 851, 852 (Idaho 1912) (hold-over tenants owed rental value in a suit for trespass, but the evidence of rental value must be specific to the portion of the tract which they wrongly occupied).[2]

> **B.      The value of the corridor in which Level 3 trespassed is subject to a well established, uniform per-mile value for the entire corridor.**

Here, the land on which Level 3 trespassed was an existing rail corridor.  The highest and best use of this existing corridor is the corridor use.  Indeed, Level 3 and its competitors in the telecommunications industry installed their fiber optic networks in such established corridors for this reason: using an existing corridor was easier than assembling a new corridor.  These pre-existing corridors have well established values using the Corridor Value methodology.  This methodology utilizes a uniform per-mile or per-foot valuation, as was in fact the case in the agreements between Level 3 and Union Pacific under which Level 3 paid Union Pacific for its claimed right to occupy the corridor.  Seibert Aff. Ex. E ("1998 Agreement").

> **1.      The Level 3 1998 Agreement uses a uniform Corridor Valuation methodology.**

The 1998 Agreement covers Level 3's occupation of 7,800 miles of right of way in 18 states, including Idaho.  All payments under the 1998 Agreement are uniform and are based on mileage.  Level 3 agreed to pay nominal amounts per mile when it executed the agreement ($192.31/mile).  *See* Seibert Ex. E, at § 2(a).  Level 3 paid slightly larger nominal, uniform, per-mile amounts upon completion of a segment.  *Id.* at § 2 (b)(1)-(2).  The real money in the contract was the annual rent for each conduit Level 3 installed.  *Id.* at §2 (c).  The rent varied by the amount and timing of Level 3's lease of dark fiber installed in the corridor, but the fee for

---

[2] Whether Level 3's trespass is considered permanent or temporary is immaterial when considering the measure of damages.  In either case, the Class Members are entitled to be compensated for the trespass based on the market value of the rights or use Level 3 has tortiously taken by dispossessing Plaintiffs of their rights to exclusive control over the disposition of these easement corridors.  In either case, that market value is the Corridor Value.

each level of usage was uniformly levied on a per-mile basis.  As is usual with long term rental agreements, the annual rent increased every 5 years based on agreed indices.  The maximum and minimum annual rental fees were, again, specified as uniform, per-mile amounts.  *Id.*

>        2.        **The Corridor Value methodology has been used repeatedly in other class action trespass cases, as exemplified in the *VEPCO* case.**

Far from unique, Level 3's payments to Union Pacific on a uniform per mile basis is the industry standard.  As the Court is aware, the claims in this case are parallel to claims against telecommunication companies across the country.  Hundreds of agreements like the Level 3 agreement here have been produced and examined by counsel and experts.  Affidavit of Dan Millea in Support of Plaintiffs' Motion for Summary Judgment on the Proper Measure of Damages ("Millea Aff. on Measure of Damages"), at ¶ 2.  These agreements all provide for uniform, per-mile pricing, and the prices do not vary with the value of the adjoining parcel.  *Id.*  Not surprisingly, when attempts are made to settle these disputes and pay fair and reasonable compensation to the adjoining landowners, the payment is always a uniform, per-foot payment for all class members on a corridor irrespective of the value of the adjoining lands that may have a different highest and best use value than the corridor itself.  *See, e.g., Uhl v. Thoroughbred Tech. & Telecomm., Inc.*, No. IP00-1232-C-B/S, 2001 WL 987840 (S.D. Ind. Aug. 28, 2001), *aff'd*, 309 F.3d 978 (7th Cir. 2002).  *See also* Millea Aff. on Measure of Damages, at ¶ 3.

Settlements with uniform per-foot payments have been approved by numerous Federal District Courts, despite defendants' uniform protestation at the litigation stage that the only way to fairly evaluate damages is to look at the appraisal value of each adjoining parcel.  *See Fisher v. Va. Elec. & Power Co.*, 217 F.R.D. 201, 225 (E.D. Va. 2003) ("*VEPCO*") ("It may well be true that the per foot mode of valuing the value of the easement is the accepted and perhaps only fair, way to calculate damages.").  *See also* Millea Aff. on Measure of Damages, at ¶ 3.

The precise damage analysis awaits the portion of this case which will be devoted to expert reports on damages, but there should be no credible question that Plaintiffs' analysis will and must be based on the established market value for communications corridors installed on existing corridors.  Under this Corridor Value methodology, Plaintiffs anticipate any expert report will generally adhere to the same principles as those espoused in an expert report plaintiffs' expert John B. Umbeck prepared in *VEPCO*.  *VEPCO* also concerned trespass and unjust enrichment claims, against a utility company for its use of an established corridor (in that case, an electric transmission corridor) for a new telecommunications system, without permission from or payment to the owners of the underlying fee.  Expert Umbeck was asked to determine the proper measure of damages.  *See* Millea Aff. on Measure of Damages, at ¶ 4 and Ex. C.  He concluded that the only way to determine the market value of the right to install cable over a parcel of land was to examine actual contracts that have already been formed.  *Id.*, Ex. C at 11-12.  In arriving at this methodology, Mr. Umbeck reasoned that the value of the remainder of the parcel outside the right of way was "totally irrelevant in calculating the market value of cable right of way over a particular parcel." *Id.* at 8-9.  This was so because the land underneath the right of way has a unique characteristic not shared by the rest of the remaining parcel and it is that unique characteristic—its suitability as a communications corridor—that was the subject of the negotiation he was modeling.  He concluded that for existing corridors being used for a new purpose, the proper measure of damages was a uniform per-foot payment based on comparable transactions from the same time period.  *Id.* at 6-9.  The contract between Level 3 and Union Pacific is yet one more example of the application of the Corridor Value methodology, and supports the same measure of market value here.

### 3.   Idaho law should be applied by the Court, not inapt decisions from other states as previously contended by Level 3.

In opposing certification, Level 3 relied on inapt, out-of-state court decisions to argue that application of the corridor valuation approach is unavailable under Idaho state law.  Two of those decisions concerned the proper measure of damages in circumstances involving the condemnation of pipeline utilities, where the courts applied the respective state law jurisprudence under the circumstances before them.  In one case, the state constitution mandated a non-corridor valuation approach, and in the other the expert had failed to meet the *Daubert* test in establishing damages.   Defendants' Sur-Reply Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification, Doc. No. 83 ("Def.'s Sur-Reply"), at 30 (citing *Exxon Pipeline Co. v. Hill*, 788 So. 2d 1154, 1165 (La. 2001) (state constitution specifically required at-the-fence ("ATF") valuation approach, not corridor valuation); *Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623 (Tex. 2002) (expert advancing Corridor Value approach for condemnees failed to meet *Daubert* test due to relying on speculative information)).  Neither case supports Level 3's previous contention that corridor valuation is precluded here.

Level 3 did not condemn property: it trespassed on property. Having chosen to pursue a business plan to beat out its competitors by employing patently unlawful means of acquiring private property, and pursing this strategy in complete disregard for each of the Class Members' property rights in these corridors, Level 3 should not be treated as a lawful condemnor. As a trespasser it is subject to the Idaho rule for trespassers, not for lawful condemnors.

Moreover, even if the Court determines there has been a permanent trespass in these corridors, and deems a before-and-after market valuation approach is appropriate, the proper measure of damages in Idaho would still be based on the Corridor Value.  Under Idaho law on the market approach to valuation, if a corridor is already established—as was clearly true here—

then the Corridor Value approach is superior to the ATF approach.  *Cf. State ex rel. Symms v. City of Mountain Home*, 493 P.2d 387, 389-90 (Idaho 1972) (in the market valuation approach, "[t]he highest and best use for which the property is adaptable and needed or likely to be needed in the reasonably near future is to be considered, not necessarily as a measure of value, but to the full extent that the prospect of demand for such use affects the market value of the property."); *Northwest Pipeline Corp. v. 95.02 Acres of Land, more or less, in Power County, Idaho*, No. CV-01-628-E-BLW, 2003 WL 25768634, at *2 (D. Idaho Dec. 19, 2003) ("If the land is especially adapted for the proposed purpose and consequently creates a 'special demand by ordinary purchasers in the ordinary market,' then the owner is entitled to claim additional value based upon the proposed purpose.") (quoting 4 *Nichols on Eminent Domain* § 12.03 (3d ed. 2003)).  This is so because the corridor's highest and best use *was* as a corridor in the before condition, and in the after condition the ability to market that corridor had been confiscated and eradicated by Level 3 due to its trespass.

Thus, by occupying the pre-established corridor owned by landowners in fee title, Level 3 took from the landowners the ability to market that corridor to Level 3.  The landowners should receive the benefit of the value of the occupation under these circumstances, as measured in their pro-rata share of a corridor that could have been marketed but for the unlawful confiscation of their corridor-segments.

The other cases relied on by Level 3 in its opposition to class certification, out of Louisiana and Colorado (*see* Def.'s Sur-Reply at 30), concerned the question of class certification only, and not whether a corridor valuation methodology would apply at all, let alone under Idaho law.  For example, in *Hebert v. Doyle Land Servs., Inc.*, No. 2:00 CV 1851, slip op. (W.D. La. Mar. 5, 2002) (First Affidavit of Stephen R. Thomas, Doc. No. 29 ("Thomas Aff."),

Ex. 1), the court never focused on valuation theory at all as Level 3 had suggested (*see* Def.'s

Sur-Reply at 30), but rather assumed without the benefit of any analysis that a corridor valuation

approach—the approach used by the industry in acquiring rights in pre-established corridors and

used successfully in other class actions, *see* §IB(2), *supra*—could not be used in a trespass case.

*See Hebert* (Thomas Aff., Ex. 1) at 4.  And in *Schweizer v. Level 3 Commc'ns, Inc.*, while the

court did look at the theories of damages under unjust enrichment and trespass, ultimately it

never analyzed the merits of the corridor valuation methodology, let alone reject its application.

*See* No. 99-CV-1323, at 18-19 (Boulder Cty. Dist. Ct. Nov. 25, 2002) (Third Affidavit of James

C. deGlee, Doc. No. 73, Ex. 3).

II.   **In Idaho, Compensatory Damages for Unjust Enrichment is the Fair and Reasonable Value of the Use and Occupation of the Corridor; and, at the Court's Discretion, Level 3 May Be Required to Disgorge Some or All of Its Profits to the Class.**

   A.   **The Measure of Class Members' compensatory damages for Level 3's unjust enrichment is the Corridor Value, calculated on a uniform, per-foot basis for each Class Member's pro-rata share.**

When a trespass results in a defendant being unjustly enriched, Idaho law historically

implies a promise—coined an "implied contract" or "implied agreement"—onto the defendant to

pay the fair and reasonable value of the property's use and occupation:

> The law is well settled that, where land is occupied without any express agreement as to the compensation to be paid therefore, there is an implied agreement that the person so occupying and using the land will pay therefore the fair and reasonable value of such use and occupation.

*Lutyen v. Ritchie,* 218 P. 430, 432 (Idaho 1923).  *See also, Tsuboi v. Cohn,* 231 P. 708, 711

(Idaho 1925) (where a promise is implied it is "because natural justice plainly requires it, in

consideration of some benefit received").  "The substance of an action for unjust enrichment lies

in a promise, implied by law, that a party will render to the person entitled thereto that which in

equity and good conscience belongs to the latter." *Great Plains Equipment, Inc. v. Northwest Pipeline Corp.,* 132 Idaho 754, 979 P.2d 627, 640 (1999).

Idaho law on unjust enrichment is consistent with the law of other states and with the current version of the RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 40 (2010)[3] ("A person who obtains a benefit by an act of trespass or conversion, or in consequence of such an act by another, is accountable to the victim of the wrong for the benefit so obtained.").[4]  In fact, the Third Restatement contains an illustration that is identical to the case before the Court:  If a telecommunications cable is installed in a right of way after payment to the Railroad, but the landowner owns the fee "*then Landowner has a claim in restitution against [the telecommunications company] for the value of the unauthorized use*."  RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 40 cmt. c, illus. 2 (emphasis added).

---

[3] A copy of the relevant section of the new restatement is attached to the Millea Aff. on Measure of Damages as Exhibit G.  Although the copy is called a "Tentative Draft," the American Law Institute, compiler and publisher of the Restatements, approved the final Tentative Draft of the Restatement (Third) of Restitution and Unjust Enrichment at its annual meeting on May 19, 2010, which "will replace the original Restatement of the Law of Restitution promulgated in 1936."  The American Law Institute, *87th ALI Annual Meeting May 17-19, 2010*, http://2010am.ali.org/actions.cfm (last visited Oct. 7, 2010).  Publication is expected by early 2011. The American Law Institute Publications Catalog, Restatement of the Law Third, Restitution and Unjust Enrichment, http://www.ali.org/index.cfm?fuseaction=publications.ppage&node_id=46 (last visited Oct. 7, 2010).

[4] Idaho courts frequently look to the Restatement of Restitution. *See, e.g.*, *Bair v. Barron*, 539 P.2d 578, 583 (Idaho 1975) ("The concept of requiring a person who has been unjustly enriched at the expense of another to make restitution to the other is well recognized in the law.") (citing RESTATEMENT (FIRST) OF RESTITUTION § 1 (1937)); *Smith v. Smith*, 511 P.2d 294, 300-01 (Idaho 1973) (same, citing same); *Hixon v. Allphin*, 281 P.2d 1042, 1047 (Idaho 1955) ("In an action for restitution, the plaintiff is entitled either to the value of the goods, rights and benefits at the time of their transfer, plus interest on said sum during the time of its detention, or to restoration of the property and rights plus damages during the time of their detention, based upon compensation for their use or rental value.") (citing same at § 157).  Notably, Idaho courts may rely upon the Restatement of Restitution even while still deemed a tentative draft.  *See Child v. Blaser*, 727 P.2d 893, 897 (Idaho Ct. App. 1986) (relying on the RESTATEMENT (SECOND) OF RESTITUTION (1988) while still in draft form).

This section of the recently adopted Third Restatement also refers, in Illustration 2, to *Raven Red Ash Coal Co. v. Ball,* 39 S.E.2d 231 (Va. 1946).  In *Raven Red Ash*, the court held that the plaintiff was permitted to waive the tort remedy for trespass and proceed on the equitable theory of assumpsit (implied contract to pay the value of use of land) where defendant had trespassed by using land beyond that permitted by an easement.  This relief was appropriate because damages for a trespass claim would otherwise be nominal if the use did not measurably decrease the fair market value:

> To hold that a trespasser who benefits himself by cutting and removing trees from another's land is liable on an implied contract, and that another trespasser who benefits himself by the illegal use of another's land is not liable on an implied contract is illogical . . .  *In both cases, he has received substantial benefit by his own wrong.*  As the gist of the action is to prevent the unjust enrichment of a wrongdoer from the illegal use of another's property, such wrongdoer should be held on an implied promise to pay in both cases.
>
> . . . .
>
> The illegal transportation of the coal in question across plaintiff's land was intentional, deliberate and repeated from time to time for a period of years.  Defendant had no moral or legal right to enrich itself by this illegal use of plaintiff's property.  *To limit plaintiff to the recovery of nominal damages for the repeated trespasses will enable defendant, as a trespasser, to obtain a more favorable position than a party contracting for the same right.*  Natural justice plainly requires the law to imply a promise to pay a fair value of the benefits received.

*Id.*  at 237-38 (emphases added).  The reasoning and holding in *Raven Red Ash* parallels that of the Idaho cases cited above.

**B.     Level 3 should be required to disgorge its profits to Class Members for the use of their corridor-lands.**

In Idaho, the measure of damages for unjust enrichment may also include the profits acquired from the misappropriated property:

> *The compensation recoverable by the plaintiff may include profits that the defendant acquired through use of the misappropriated property* as illustrated by *Basic American, Inc. v. Shatila*, 133 Idaho 726, 746, 992 P.2d 175, 195 (1999),

where our Supreme Court held that the unjust enrichment from misappropriation
of trade secrets was the profits derived from use of those trade secrets.

*Holladay v. Lindsay*, 152 P.3d 638, 641-43 (Idaho Ct. App. 2006) (emphasis added).  *See also,*
RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 40(2)(a) (If the defendant is
"a conscious wrongdoer, or one who acts despite the known risk that the conduct in question
violates the rights of the claimant" then the defendant should "be required to disgorge all gains
(including consequential gains) derived from the wrongful transaction.").  Any such gains Level
3 acquired from its trespass will be the result of using the entire corridor for the fiber optic
system.  The gains generated will not vary from parcel to parcel.

If the Court holds Level 3 profited from the unlawful occupation of Class Members'
properties, then Idaho law holds an agreement was implied.  Therefore, Level 3 must pay the fair
and reasonable value for the use of the corridors, as measured using the Corridor Value
methodology.  Further, Plaintiffs ask the Court to find as a matter of law that disgorgement
damages are also at issue and, if awarded by a jury, should be paid to the Class Members based
on their pro-rata share of the total linear feet at issue in this case.

## CONCLUSION

Level 3 is a major corporation that should be expected to know the law and act in
accordance with it, yet it pursued a business plan that skirted lawful efforts to acquire its rights in
private property: it did not condemn the rights it needed to occupy the corridor, nor did it
negotiate for or obtain an easement from the property owners.  Idaho law requires payment of
damages in trespass and unjust enrichment cases in a way that fits a defendant's actions and the
plaintiff's injury.  In this case, only damages based on the Corridor Value will fit this tort and
provide fair and reasonable damages to Plaintiffs.

Idaho law provides that if Level 3's trespass is established: (1) the appropriate methodology for determining trespass damages is by Corridor Valuation, apportioned based on the Class Members' respective pro-rata share on a linear per-foot basis; and (2) the resulting unjust enrichment damages are (a) the fair and reasonable value of the property's use and occupation under the Corridor Value methodology, and (b) the disgorgement of Level 3's profits acquired through its use of the Class Members' misappropriated property, to be shared on the same pro-rata basis.

Dated:  October 8, 2010                    Respectfully submitted,


**ZELLE HOFMANN VOELBEL & MASON LLP**

/s/Dan Millea
Dan Millea
500 Washington Avenue South
Suite 4000
Minneapolis, MN  55415
Telephone:  (612) 339-2020
Facsimile:  (612) 336-9100

        -- AND --


/s/Brad P. Miller
Brad P. Miller
**HAWLEY TROXELL ENNIS & HAWLEY LLP**
877 Main Street, Suite 1000
P.O. Box 1617
Boise, ID 83701-1617
Telephone: (208) 344-6000
Facsimile: (208) 342-3829
Email:  bpm@hteh.com

**OF COUNSEL:**

Nels Ackerson
Kathleen Kauffman
**ACKERSON KAUFFMAN FEX, PC**
1701 K Street, NW, Suite 1050
Washington, DC 20006
Telephone:  (202) 833-8833
Facsimile:  (202) 833-8831

Henry J. Price
**PRICE, WAICUKAUSKI, RILEY & DEBROTA, LLC**
The Hammond Block Building
301 Massachusetts Avenue
Indianapolis, IN  46204
Telephone:  (317) 633-8787
Facsimile:  (317) 633-8797

Roger C. Johnson
**KOONZ, MCKENNEY, JOHNSON,
DEPAOLIS & LIGHTFOOT, L.L.P.**
2001 Pennsylvania Avenue, N.W., Suite 450
Washington, DC 20006
Telephone:  (202) 659-5500
Facsimile:  (202) 822-1828

## CERTIFICATE OF SERVICE

I hereby certify that on October 8, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Joseph E. Jones     -     jjones@fslf.com
Stephen R. Thomas  -     srt@moffatt.com
Tyler J. Anderson    -     tya@moffatt.com
William T. Gotfryd  -     wtglawproj@aol.com


/s/Dan Millea
Dan Millea, Attorney for Plaintiffs