Brad P. Miller, ISB No. 3630
HAWLEY TROXELL ENNIS & HAWLEY LLP
877 Main Street, Suite 1000
P.O. Box 1617
Boise, ID 83701-1617
Telephone: (208) 344-6000
Facsimile: (208) 342-3829
Email:  bpm@hteh.com

John B. Massopust
Dan Millea
ZELLE HOFMANN VOELBEL & MASON LLP
500 Washington Avenue South, Suite 4000
Minneapolis, MN  55415
Telephone: (612) 339-2020
Facsimile: (612) 336-9100

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DENNIS KOYLE, CHARLES K. TURNER, and the CARAVELLE CORPORATION, INC. on behalf of themselves and all others similarly situated, )))) | Case No. CIV-01-0286-S-BLW |
| ) | |
| Plaintiffs, ))) | **PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF JOINT** |
| v. ))) | **MOTION FOR CERTIFICATION OF SETTLEMENT CLASS, PRELIMINARY APPROVAL OF** |
| LEVEL 3 COMMUNICATIONS, INC., a Delaware Corporation, LEVEL 3 COMMUNICATIONS, LLC, a Delaware Limited Liability Corporation, LEVEL 3 TELECOM HOLDINGS, INC., a Delaware Corporation, and SPRINT COMMUNICATIONS COMPANY, L.P., a Delaware Limited Partnership, )))))))))) | **CLASS-ACTION SETTLEMENT, AND APPROVAL OF FORM AND MANNER OF NOTICE** |
| ) | |
| Defendants. ) | |

**Plaintiffs' Counsel**

Nels Ackerson
Kathleen C. Kauffman
ACKERSON KAUFFMAN FEX, P.C.
1701 K Street, N.W., Suite 1050
Washington, DC 20006

Henry J. Price
PRICE, WAICUKAUSKI &
RILEY, LLC
301 Massachusetts
Avenue
Indianapolis, IN 46204

Dan Millea
ZELLE, HOFMANN, VOELBEL &
MASON, LLP
500 Washington Avenue South
Suite 4000
Minneapolis, MN 55415

Irwin B. Levin
Scott D. Gilchrist
COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204

Brad P. Miller
HAWLEY TROXELL ENNIS
& HAWLEY LLP
877 Main Street, Ste 1000
P.O. Box 1617
Boise, ID 83701-1617

Andrew W. Cohen
KOONZ, MCKENNEY, JOHNSON,
 DEPAOLIS & LIGHTFOOT, LLP
2001 Pennsylvania Avenue, N.W.
Suite 450
Washington, DC 20006

# TABLE OF CONTENTS

Introduction and Summary ................................................................................................ 1

Discussion ........................................................................................................................... 5

1. Procedural history .................................................................................................. 5

2. Subject-matter jurisdiction and venue .................................................................. 8

3. Settlement structure ............................................................................................... 10

4. Principal Settlement terms ..................................................................................... 12

   A. Claim submission and cash benefits ......................................................... 12

   B. Funding ....................................................................................................... 14

   C. Grant of easement and release ................................................................... 14

   D. Claims administrator .................................................................................. 15

   E. Preliminary approval .................................................................................. 16

   F. Opt-out rights ............................................................................................. 16

   G. Final approval ............................................................................................. 17

   H. Claims processing and payment of compensation to class members ....... 17

   I. Value of the Settlement and attorneys' fees .............................................. 18

5. The Court should certify the Settlement class ....................................................... 19

   A. The Settlement class satisfies the four prerequisites for certification
      under Rule 23(a) ......................................................................................... 19

      (1) Numerosity is satisfied ................................................................... 20

      (2) Commonality is satisfied ................................................................ 21

      (3) Typicality is satisfied ..................................................................... 22

      (4) Adequacy of representation is satisfied .......................................... 23

B.     The Class satisfies the predominance and superiority requirements of Rule 23(b)(3) ............................................................................................... 23

     (1)     Predominance is satisfied ............................................................. 23

     (2)     Superiority is satisfied .................................................................. 25

6.     The Court should preliminarily approve the Settlement ........................................ 26

     A.     The Settlement was reached after extensive discovery and litigation, consideration of the prospects if the case were tried, and extraordinarily lengthy and painstaking arm's-length negotiations .......................................................................................... 27

     B.     Cash compensation under the Settlement is within the range of reasonableness .......................................................................................... 28

     C.     The proposed attorneys' fees are reasonable ........................................... 29

7.     The Court should approve the form and manner of notice ................................... 31

Conclusion ....................................................................................................... 32

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page**

*Adoma v. Univ. of Phoenix, Inc.*, 270 F.R.D. 543, 547 (E.D. Cal. 2010) ...................................... 9

*Ahern v. Cent. Pac. Freight Lines*, 846 F.2d 47, 48 (9th Cir. 1998) ........................................... 26

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613 (1997) ........................ 19, 20, 23, 24, 25

*Boeing v. Gemert*, 444 U.S. 472, 479 (1980) ............................................................................ 29

*Bush v. Cheaptickets, Inc.*, 425 F.3d 683, 684 (9th Cir. 2005) .................................................... 8

*Camacho v. City of St. Luis*, 359 Fed. App'x 794, 796 (9th Cir. 2009) ...................................... 26

*Cf. Rannis v. Recchia*, 380 Fed. App'x 646, 651 (9th Cir. 2010) ................................................ 21

*Drimmer v. WD-40 Co.*, 343 Fed. App'x 219, 221 (9th Cir. 2009) ............................................. 23

*Fischel v. Equitable Life Assur. Soc'y of the U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002) ....................................................................................................................................... 30

*Gay v. Waiters' & Dairy Lunchmen's Union*, 549 F.2d 1330, 1332 n.5 (9th Cir. 1997) ....................................................................................................................................... 21

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) .................................... 21, 26, 29

*Hinshaw v. AT&T Corp.*, No. 29D01 9705-CP-000308, 1998 WL 1799019 (Ind. Super. Aug. 24, 1998) ................................................................................................................ 20

*Home on the Range v. AT&T Corp.*, 386 F. Supp. 2d 999, 1007 n.5 (S.D. Ind. 2005) ....................................................................................................................................... 11

*Horton v. USAA Cas. Ins. Co.*, 266 F.R.D. 360, 366 (D. Ariz. 2009) ......................................... 4

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) ................................................ 30

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 227 F.R.D. 553, 556 (W.D. Wash. 2004) ............................................................................................................................ 3, 4

*In re The Exxon Valdez*, 229 F.3d 790, 795 (9th Cir. 2000) ...................................................... 26

*In re Wells Fargo Home Mortgage*, 571 F.3d 953, 958 (9th Cir. 2009) ............................... 25-26

*Kingsborough v. Sprint Commc'ns Co.*, 673 F. Supp. 2d 24, 35 (D. Mass. 2009) .............. 7, 8, 27

*Lewis v. First Am. Title Ins. Co.*, 265 F.R.D. 536, 555 (D. Idaho 2010) .................................... 21

*Local Joint Executive Board of Culinary/Bartender Trust Fund v. Las Vegans Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) ...................................................................... 25

*Murillo v. Pacific Gas & Elec. Co.*, 266 F.R.D. 468, 473 (E.D. Cal. 2010) ................................. 3

*Nicodemus v. Union Pacific Corp.*, 440 F.3d 1227, 1234-36 (10th Cir. 2006) ........................... 9

*Ostler v. Level 3 Communications, Inc.*, Cause No. IP 00-0718-C H/K, 2002 WL 31040337 (S.D. Ind. Aug. 27, 2002) ...................................................................................... 24

*Rodriguez v. Hayes*, 591 F.3d 1102, 1124 (9th Cir. 2010) ....................................................... 22

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) ........................................... 27

*See In re AT&T Fiber Optic Cable Installation Litig.*, 1:98-cv-1300-DFH-TAB (S.D. Ind.) ....................................................................................................................... 28

*Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007) .............................................. 9

*Shaffer c. Cont'l Cas. Co.*, 362 Fed. App'x 627, 631 (9th Cir. 2010) .................................. 29, 31

*Silber v. Mabon*, 18 F.3d 1449, 1453 (9th Cir. 1994) .................................................... 31

*Smith v. Sprint Commc'ns Co.*, 387 F.3d 612, 614-15 (7th Cir. 2004) ........................... 5-6, 7, 27

*Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) ...................................................... 20, 23

*Uhl v. Thoroughbred Technology and Telecommunications, Inc.*, 2001 WL 987840, at *9 (S.D. Ind. Aug. 28, 2001), *aff'd*, 309 F.3d 978 (7th Cir. 2002) ..................... 20, 28

*United Steel v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (9th Cir. 2010) ......................................... 8

*West v. Circle K Stores, Inc.*, No. 04-0438, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006) ....................................................................................................................... 3

*Yeagley v. Wells Fargo & Co.*, 365 Fed. App'x 886, 887 (9th Cir. 2010) .................................. 29

*Zografos v. Qwest Commc'ns Corp.*, 225 F. Supp.2d 1217 (D. Or. 2002) .................................... 5

## Statutes

28 U.S.C. § 1332(a) .......................................................................................................... 8

28 U.S.C. § 1332(d)(1) ...................................................................................................... 8

28 U.S.C. § 1332(d)(2) .................................................................................................. 8, 9

28 U.S.C. § 1332(d)(6) ...................................................................................................... 9

28 U.S.C. § 1391 ............................................................................................................... 9

## Rules

Fed. R. Civ. P. 23 .................................................................................................... passim

## Other Authorities

Manual for Complex Litigation (Fourth) § 21.632 (2006) ............................................. 3

# INTRODUCTION AND SUMMARY[1]

The Idaho Class Settlement Agreement ("Settlement") before the Court will resolve trespass, unjust-enrichment, and related claims held by thousands of landowners statewide against two of the nation's largest telecommunications companies.  The proposed Settlement will terminate the pending property-rights dispute, which arises out of the installation of fiber-optic cable on railroad rights of way by the Settling Defendants — Level 3 Communications, Inc., Level 3 Communications, LLC, and Level 3 Telecom Holdings, Inc. (collectively, "Level 3") and Sprint Communications Company L.P. ("Sprint")."  The claims resolved by the Settlement affect approximately 2,000 parcels of land in Idaho, covering 246 miles of rights of way throughout the state.

Plaintiffs' Counsel estimate that a minimum of $1.2 million in cash benefits are available for class members to claim.  Administrative costs — to be paid separately by the Settling Defendants — in creating and updating a sophisticated database to notify class members, implement the Settlement, and process claims, are estimated at an additional $171,000.  Attorneys' fees and costs of approximately $426,000, which the Settling Defendants will also pay separately under the Settlement, and which will not reduce benefits payable to class members, bring the total gross value of the Settlement to roughly $1.8 million.

The proposed Settlement resolves claims arising from a practice under which telecommunications companies installed fiber-optic cable systems in railroad rights of way under agreements with the railroads possessing those rights of way.  Plaintiffs in this case and in approximately seventy more cases in other state and federal courts have filed complaints alleging that the railroads do not have sufficient rights to authorize the installation of fiber-optic-cable

---

[1] This Memorandum is filed by Plaintiffs' Counsel, who are advised by the Settling Defendants that they will not file a response and that they do not take any position on its contents.

systems in some parcels of the rights of way.  The Settling Defendants have answered that the railroads own much of the rights of way in fee and that, even in the parcels where they own only easements, the railroads have sufficient rights to permit a telecommunications use by third parties.

While the Parties disagree on the basic question of a railroad's authority to license third-party telecommunications use, they agree that the analysis includes the railroads' acquisition of property interests in their rights of way.  The railroads acquired some of their property interests by private conveyance, and those acquisitions raise issues under Idaho property law.  The railroads also acquired property interests under federal "land grant" legislation enacted in the mid-1800s, and those acquisitions raise issues of federal statutory interpretation.  The Settlement is tailored to address differences that arise based on whether the railroads' property interests were acquired through private conveyance or under federal land-grant legislation.

The proposed Settlement follows years of arduous litigation in courts across the country. For the past year, the Settlement of claims in Idaho and forty-five other states has been the subject of extensive negotiations with the assistance of Eric D. Green of Resolutions, LLC, a nationally recognized mediator based in Boston, Massachusetts.  Those negotiations have resulted in agreements, like the one before this Court, under which the Settling Defendants would pay cash compensation, per linear foot of right of way, to qualifying landowners for both past and future damages allegedly caused by the occupation and use of their property.  In exchange, the Settling Defendants will receive a release of all claims arising out of the installation and operation of telecommunications facilities in the rights of way.  To assure that the Idaho Settlement resolves all claims, including any claims by subsequent purchasers of property covered by the Settlement, all current landowners on whose property a Settling

Defendant has installed telecommunications facilities also will convey an easement to the Settling Defendants.  The easements will fix the extent of the lawful, future use of the right-of-way property that is in dispute, and, under the Settlement, the Settling Defendants may record the easements to provide notice to subsequent purchasers.

The proposed Settlement requires judicial approval.  Under Federal Rule of Civil Procedure 23(e), the Court must approve any proposed settlement of the claims of a certified class and must direct notice in a reasonable manner to all class members bound by the settlement.  Fed. R. Civ. P. 23(e)(1)(A) and (B).  In implementing Rule 23(e), courts typically follow a two-step procedure:  (1) preliminary approval of the settlement terms, certification of the settlement class, and approval of the notice plan, followed by (2) a final hearing on the fairness, reasonableness, and adequacy of the settlement.

Although the Court has already certified a litigation class against Level 3, the Settlement adds Sprint as a party for settlement purposes.  Accordingly, the Parties seek certification of the Settlement class, preliminary approval of the Settlement, and authorization of notice to the class.  *See*, *e.g.*, *Murillo v. Pacific Gas & Elec. Co.*, 266 F.R.D. 468, 473 (E.D. Cal. 2010).  ("Procedurally, the approval of a class action settlement takes place in two stages.  In the first stage of the approval process, '"the court preliminarily approve[s] the Settlement pending a fairness hearing, temporarily certifie[s] the Class . . . , and authorize[s] notice to be given to the Class."') (quoting *West v. Circle K Stores, Inc.*, No. 04-0438, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006) (quoting *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 227 F.R.D. 553, 556 (W.D. Wash. 2004))).  Where, as here, "the case is presented for both class certification and settlement approval, the certification hearing and the preliminary fairness evaluation can usually be combined."  MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2006).

With respect to class certification, "the judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)." *Id.* The touchstone of the preliminary fairness evaluation under Rule 23(e)(2) is that the Settlement is "fair, reasonable, and adequate." *See*, *e.g.*, *Horton v. USAA Cas. Ins. Co.*, 266 F.R.D. 360, 366 (D. Ariz. 2009) ("[T]he Court finds that the proposed settlement appears to be fundamentally fair, adequate, and reasonable. The Court further finds that the class warrants conditional certification pursuant to Rule 23 of the Federal Rules of Civil Procedure. The Court will grant the motion for preliminary approval and conditional class certification."). And regarding approval of the form and manner of notice, the Court must find under Rule 23(c)(2) that the proposed notice plan provides "the best notice practicable under the circumstances," and must communicate, inter alia, the nature of the action and class members' rights. *See*, *e.g.*, *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 227 F.R.D. at 565 (approving notice under Rule 23(c)(2) as adequate and reasonably calculated to inform interested parties of settlement).

As set forth herein, the Settlement class satisfies the requirements for certification under Rule 23, just as the litigation class the Court certified did. The proposed Settlement easily meets the requirements for preliminary approval, as the cash benefits and other provisions are fair, adequate, and reasonable. The proposed form and manner of notice to hundreds of landowners across Idaho is thorough in scope and reach, comporting with current best practices, and is undoubtedly the "best notice practicable under the circumstances." Accordingly, the Court should grant the Parties' joint motion for certification of the settlement classes, preliminary approval of the Settlement, and approval of the form and manner of notice.

# DISCUSSION

## 1.    Procedural history.

The "right-of-way" litigation commenced more than a decade ago, in federal and state courts.  By 2001, all Plaintiffs' Counsel had filed cases against the Settling Defendants.  Those cases were hotly contested and involved extensive discovery, motions practice, and other pre-trial litigation, including interlocutory appeals.  In the course of the litigation, both the Plaintiffs and the Settling Defendants became well informed of the strengths and weaknesses of their positions.

In the fall of 2001, certain plaintiffs and defendants agreed to a nationwide settlement that included all the claims that are the subject of this action.  That proposed settlement was presented to the United States District Court for the Northern District of Illinois, before the Hon. Wayne R. Andersen, in the case styled *Smith v. Sprint Commc'ns Co.*, 99 C 3844.  Other plaintiffs intervened in *Smith* and objected to the settlement.  In July 2003, after proceedings in Illinois and Oregon, *see Zografos v. Qwest Commc'ns Corp.*, 225 F. Supp.2d 1217 (D. Or. 2002), Judge Andersen preliminarily approved a revised nationwide settlement agreement and enjoined all related right-of-way cases nationwide.

Certain intervenors appealed Judge Andersen's preliminary approval order to the United States Court for Appeals for the Seventh Circuit.  More than a year later, in October 2004, the Seventh Circuit reversed, finding inadequate representation of plaintiffs in Kansas and Tennessee, where litigation classes had already been certified.  *See Smith v. Sprint Commc'ns*

*Co.*, 387 F.3d 612, 614-15 (7th Cir. 2004).  The Seventh Circuit also lifted the injunction, and right-of-way litigation around the country resumed.[2]

Settlement discussions began anew in Chicago in late 2004.  When it became apparent that the plaintiffs' negotiating committee and the Defendants could not reach agreements that addressed the Seventh Circuit's concerns in *Smith*, Judge Andersen requested that plaintiff Smith move to amend the pending action in the Northern District of Illinois to dismiss non-Illinois plaintiffs and to seek only a state-wide class of landowners against Sprint alone.  Plaintiffs filed that motion and, on April 20, 2005, the *Smith* court granted it.  There has been no further substantive action in *Smith* since then.

Almost a year later, in March 2006, with negotiations stalled and litigation continuing, the parties enlisted Professor Green to mediate.  By March 2007, after more than a year of mediation, the Parties believed that they had reached agreements covering all forty-six states at issue.[3]   On April 6, 2007, the plaintiffs filed a master complaint in the U.S. District Court for the District of Massachusetts, *Kingsborough v. Sprint Commc'ns Co.,* Civil Action No. 07-10651-LTS, alleging claims on behalf of representatives of forty-six state settlement classes and two federal land-grant classes.  Additional issues arose as the parties attempted to reduce their apparent agreements to writing and later as the Settling Defendants attempted to negotiate the terms of the railroads' involvement in the claims-administration process, which delayed until early 2008 final resolution of the agreements' substantive terms.  On July 2, 2008, the parties

---

[2] Thereafter, the Tennessee litigation resumed in Tennessee state court, but the Kansas litigation did not go forward.

[3]  The Parties did not include in their negotiations Tennessee, where litigation continued; Louisiana, where a settlement was negotiated separately by other plaintiffs; and Alaska and Hawaii.

filed a second amended class-action complaint, the final settlement papers, and a joint preliminary-approval motion.

On July 18, 2008, the *Kingsborough* court preliminarily approved the settlement. Notice was given to class members and on November 17, 2008 a fairness hearing was held. But on December 9, 2009, the *Kingsborough* court concluded that it lacked subject-matter jurisdiction over the settlements under the local-action doctrine. *Kingsborough v. Sprint Commc'ns Co.,* 673 F. Supp. 2d 24, 35 (D. Mass. 2009) ("[T]he court concludes that because the claims asserted in this litigation concern solely matters relating to title to land, the court does not have jurisdiction over this matter as it relates to any properties located outside of Massachusetts.") The *Kingsborough* court accordingly denied the final-approval motion as moot. *Id.*

The parties returned to negotiations under Professor Green's auspices. The parties agreed that, in order to obviate the concerns that led to a reversal in *Smith* and dismissal in *Kingsborough*, the parties would have to reach separately negotiated, state-by-state settlements and present them for approval through an action commenced in each state where the Settling Defendants' telecommunications facilities were located. In late 2010, the parties reached agreement on the terms of forty-six separate state settlement agreements, including the one before this Court.

Contemporaneous with the parties' longstanding efforts to reach settlement of the right-of-way litigation nationwide, this case proceeded on its own path. On June 19, 2001, Plaintiffs filed their Complaint (Document No. 1). On December 1, 2005, the Court certified a litigation class comprising all owners of land in Idaho that underlies or is adjacent to a railroad right of way within which the Level 3 Defendants own, operate or use fiber-optic cable. (Document No. 122). On December 14, 2005, the Level 3 Defendants petitioned the Ninth Circuit for

permission to appeal the class certification order, and on February 24, 2006, the petition was

denied.  (Document No. 126.)  The case was stayed on April 13, 2007, (Document No. 152), and

on June 25, 2007, the Court granted Plaintiffs' and the Level 3 Defendants' joint motion to

transfer venue to the District of Massachusetts to be heard with *Kingsborough*.  (Document No.

153.)  On February 6, 2010, the Court ordered the Idaho matter reopened, (Document No. 157),

and on December 16, 2010, Plaintiffs filed a Motion for Leave to File Second Amended Class

Action Complaint, (Document No. 194), adding Sprint as a Defendant.  On December 20, 2010,

the Court granted the motion.  (Document No. 196.)  During a Telephone Scheduling Conference

on December 10, 2010, the Parties advised the Court of the Settlement, and the Court set January

18, 2011 as the deadline for the filing of the motion for preliminary approval.  The preliminary-

approval hearing is scheduled for January 25, 2011.  (Document No. 195.)

## 2.      Subject-matter jurisdiction and venue.

The Court has subject-matter jurisdiction under 28 U.S.C. Sec.§ 1332(a) because there is

complete diversity between the parties and the amount in controversy exceeds $75,000, exclusive

of interest, costs and attorneys' fees.  The Court also has subject-matter jurisdiction under

amendments to the diversity-of-citizenship and amount-in-controversy provisions of 28 U.S.C.

§ 1332(d)(2).  In the Class Action Fairness Act of 2005 ("CAFA"), "Congress abandoned the

'complete' diversity requirement of 28 U.S.C. § 1332(a).  Instead, in class actions, CAFA

"provides expanded original diversity jurisdiction for class actions meeting the amount in

controversy and minimal diversity and numerosity requirements set forth in 28 U.S.C.

§ 1332(d)(1)."  *United Steel v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (9th Cir. 2010); *see also*

*Bush v. Cheaptickets, Inc.*, 425 F.3d 683, 684 (9th Cir. 2005) (same).

Specifically, under CAFA, diversity jurisdiction exists in class actions as long as "any class member is a citizen of a state different from any defendant." *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007).  Under 28 U.S.C. 1332(d)(2), this Court therefore has subject-matter jurisdiction of this civil action, as none of the Settling Defendants is a citizen of Idaho.  With respect to the amount-in-controversy requirement for a class action under CAFA, it is satisfied if the amount "exceeds the sum or value of $5,000,000, exclusive of interest and costs."  28 U.S.C. § 1332(d)(6).  "Under CAFA, the court aggregates potential class members' claims."  *Adoma v. Univ. of Phoenix, Inc.*, 270 F.R.D. 543, 547 (E.D. Cal. 2010) (citing 28 U.S.C. 1332(d)(6)).  The amount in controversy, as reflected by Plaintiffs' allegations concerning the aggregated claims of all class members, exceeds $5,000,000, exclusive of interest and costs.  (*See* Pls.' Second-Am. Class-Action Compl. ¶¶ 21-40.)  Moreover, the amount in controversy requirement is met by the class's request for injunctive relief in the form of non-use and removal of the Settling Defendants' fiber-optic-cable facilities.

The Court also has jurisdiction pursuant to 28 U.S.C. § 1331 because, under federal land-grant statutes, the United States government originally granted to the railroads most of the rights of way at issue here.  This action therefore presents a substantial federal question.  *Nicodemus v. Union Pacific Corp.*, 440 F.3d 1227, 1234-36 (10th Cir. 2006) (en banc) ("We agree that the contested interpretation of the federal land-grant statutes as between these parties involves a substantial federal issue.").

Finally, venue is proper in this District under 28 U.S.C. § 1391 in that the Settling Defendants do business and are qualified to do business in this District; a substantial part of the events giving rise to the Plaintiffs' claims occurred in this District; and a substantial part of the property that is the subject of this action is situated in this District.

3.      **Settlement structure.**

The Parties negotiated the amounts to be paid under the Settlement based on their divergent views of the relative strengths or weaknesses of the claims under Idaho law.  The issues taken into account in negotiations included: whether railroads hold fee title to their rights of way in Idaho or only easement interests; whether a right-of-way easement granted to a railroad is broad enough to permit the railroad to license third-party telecommunications use of the property, both on federal land-grant rights of way and on rights of way conveyed by private conveyances; the length of the applicable statute of limitations; whether a theory of continuing trespass could provide the basis for the assertion of additional claims after original claims were bared; whether the telecoms had the power of eminent domain; whether inverse condemnation was an exclusive remedy; and the applicable measure of damages for trespass and inverse condemnation.  The amounts to be paid under the Settlement reflect the relative strengths and weaknesses of Plaintiffs' claims and Defendants' defenses under Idaho law and federal law related to rights derived from federal land-grant legislation.

Principally, the Idaho Settlement involves the claims of class members who own property adjacent to or underlying a right of way that a railroad originally acquired under a federal land-grant statute, as opposed to a private conveyance.  Beginning in the mid-1800s, to encourage and facilitate the building of transcontinental railroads, Congress employed the technique of granting railroads not only right-of-way corridors but also ownership of alternating sections of the public lands on either side of those corridors.  Congress significantly altered this practice through subsequent legislation.  Whether a railroad received merely an easement or a fee-interest in land conveyed under a particular federal land-grant statute has been a contentious issue in right-of-

way litigation and in settlement negotiations between the Parties.  But the answer to that question derives from federal law construing the federal statutes.

Generally, pre-1871 land grant acts conveyed alternating fee interests to the railroads through the familiar "checkerboard" land-grant scheme.  *See, e.g.*, *Home on the Range v. AT&T Corp.*, 386 F. Supp. 2d 999, 1007 n.5 (S.D. Ind. 2005) ("The 1862 Act, like many of the 19th century railroad right-of-way grants, divided the land surrounding the grant into alternating 'checkerboard' tracts, typically of one square mile each, with odd-numbered tracts granted outright to the railroad and even-numbered tracts reserved to the government for public sale and/or homesteads.").  In 1875, Congress passed the General Right of Way Act, 18 Stat. 482.  It did not include a grant of lands.  Between 1871 and 1875, some federal land-grant acts included grants of lands outside the right of way and some did not.

In Idaho, there are non-land-grant miles, pre-1875-land-grant miles at issue (in the northern part of the state, where Sprint installed its telecommunications facilities), and 1875-land-grant miles (in the southern part of the state, where Level 3 installed its facilities).  Accordingly, the Idaho Settlement includes non-land-grant, pre-1875 land-grant, and 1875-land-grant benefits.  Consistent with the courts' analysis of the scope of the property rights conveyed to the railroads under the statutes, the land-grant-compensation amounts vary for land that (1) is in a section that was granted to the railroads with a pre-1875 land grant; (2) is in a section that was not granted to the railroads with a pre-1875 land grant; and (3) that is next to an 1875 land-grant right of way.  Further, all Idaho class members adjoining land-grant rights of way can qualify for higher non-land-grant benefits by showing that the right of way next to their property is in fact not subject to the land grant.  They can do so by showing that the land was patented to their predecessors in title before — or that the railroad granted fee title in the right of way to

their predecessors after — the respective railroads acquired rights under the applicable land-grant statutes.

## 4.    Principal Settlement terms.

The Settlement fully resolves the litigation between the members of the settlement class and the Settling Defendants arising out of the installation, maintenance, and use of fiber-optic cable in Idaho railroad rights of way.  The Settlement and the exhibits to it (including identification of the settled right-of-way corridors, proposed orders, notices, claim forms, easements, releases, and the list of released right-of-way providers) are attached as Exhibit 1.[4] The proposed preliminary-approval order is attached as Exhibit 2.

### A.    Claim submission and cash benefits.

All class members are required to complete, sign, and submit a claim form to the claims administrator.  Settlement § X.A.2; *see* Ex. 1, Tab G (various versions of claim form).  With the claim form, class members must provide a deed or certificate of title that (1) shows they own land next to a right of way and (2) includes the land's legal description.  Settlement § II.B.1.

Idaho class members who own property adjacent to non-land-grant rights of way and submit a deed or certificate of title will be paid $2.28 per foot.  Settlement at 4 (defining "Idaho Non-Land-Grant Benefits").  Idaho class members who own property adjacent to pre-1875 land-grant section rights of way and submit qualified claims will be paid $0.13 foot, *id*. at 5 (defining, "Idaho Pre-1875 Land-Grant Section Benefits").  Additional requirements apply to claims for pre-1875 land-grant non-section benefits and 1875 land-grant benefits.  To obtain those benefits,

---

[4] These documents comprise all the agreements made in connection with the proposed Settlement.  *See* Rule 23(e)(3).

class members must also submit a patent[5] to a predecessor in interest which demonstrates that the federal government conveyed the cable side[6] of the right of way without retaining the government's property interest in the right-of-way land.  *Id*. §§ II.B.3 and II.B.4.  Qualifying pre-1875 land-grant non-section claimants will receive $0.26 per foot, *id*. at 5 (defining "Idaho Pre-1875 Land-Grant Section Benefits"), and 1875 land-grant claimants will receive $1.25 per foot. *Id*. at 4 (defining "Idaho 1875 Land-Grant Benefits").

For otherwise qualifying claims for both land-grant and non-land-grant benefits, a Settling Defendant can defeat the claim by showing that the class member or the class member's predecessor in title expressly granted the Settling Defendant the right to use the right of way for telecommunications purposes, i.e., previously gave an easement.  *Id*. § II.B.6.(a).

Land-grant claimants may also qualify for the higher non-land-grant benefits if they can establish that: (1) a predecessor in interest obtained title to the land at issue before the government granted any interest to the railroad or (2) even though the railroad obtained its interest first, at a later time, the class member or a predecessor in interest purchased the right-of-way land from the railroad and the railroad reserved only an easement.  *Id*. § II.B.2.

A qualified claimant that has owned the property adjoining the rights of way throughout the entire compensation period — i.e., the period commencing with the installation of the fiber-optic cable, *see id*. at 3 (defining "Compensation Period" and "Construction Date") — receives the entire amount of benefits attributable to the rights of way.  *Id*. § II.C.2.  If there are both current and prior owners of the property, the attributable benefits are allocated *pro rata* based on their respective periods of ownership.  *Id*.

---

[5] Patents are generally available online at: http://www.glorecords.blm.gov/PatentSearch/.

[6] The term "cable side" refers to side of the center line of the right of way on which a Settling Defendant has installed its fiber-optic cable and related equipment.  Settlement at 2 (definitions).

**B.**     **Funding.**

Under the terms of the Settlement, the claims administrator will establish an administrative account from which the costs of providing notice and other administrative costs will be paid.  *Id*. § III.B.1.  The Settling Defendants will each make an initial deposit, in an amount to be determined by the claims administrator, into the account within ten days of preliminary approval.  *Id*. § III.B.2.  The Settling Defendants will thereafter make such additional deposits as the claims administrator deems necessary for the reasonable expenses of settlement administration.  *Id*.  Settlement class members will not be responsible for any claims-administration costs.  *Id*. § III. B.3.

Within thirty days of final approval, the Settling Defendants each will make an initial deposit, in amount to be determined by the Claims Administrator, into a settlement account.  *Id*. § III.A.1.  Those funds will be used to pay class-member compensation as previously described.  The Settling Defendants will thereafter make such additional deposits, as directed by the claims administrator, to provide ongoing funding sufficient to pay qualified class-member claims in a timely fashion.  *Id*.  Any balance in the settlement account — after all contemplated payments — will be refunded to the Settling Defendants on a *pro rata* basis, with interest.  *Id*.

**C.**     **Grant of easement and release.**

All class members who do not opt out will release each Settling Defendant who owns telecommunications facilities in a railroad right of way adjacent to the class member's property. Settlement § IV.B.1; *see* Ex. 1, Tabs J (current-landowner release) and J(1) (prior-landowner release).  The released parties will include the Settling Defendants, any person using the telecommunications facility of a Settling Defendant, and the railroads.  *Id*. at 7 (defining "Released Parties"); *see* Ex. 1, Tab L (list of released Idaho right-of-way providers).

14

All current landowners who do not opt out also will convey an easement to each Settling Defendant who owns telecommunications facilities in a railroad right of way adjacent to the class member's property.  Settlement § IV.C.1; *see* Ex. 1, Tab H (easement).  Under Rule 70, the Court's final-approval order will direct the claims administrator to execute and convey to each Settling Defendant an easement on behalf of those current-landowner class members who do not personally execute and deliver the easement.  Settlement § VIII.A.1.(i); *see* Ex. 1, Tab I (claims administrator easement deed).  The Court also will be asked to enter an easement deed, which the Settling Defendants or Settlement Class Counsel may record.  *Id*. § VIIIA.1.(k); *see* Ex. 1, Tab K (easement deed by court order).

The easements grant the Settling Defendants, and their successors and assigns, a non-exclusive, perpetual easement in the right-of-way property for the presence of the fiber-optic cable and related equipment.  Specifically, the easements provide for a Settling Defendant's right to be on the right of way where its telecommunications equipment currently is located or subsequently moved, extending no more than ten feet on each side of the Settling Defendant's telecommunications cable system.  *See* Ex. 1, Tab H at 1-2.  The scope of the easements does not include non-cable-side property, and does not permit the installation of large structures, cell towers, or other components of a primarily above-ground telecommunications system.  *See id*. at 2.  The easements also provide for the right of reasonable ingress and egress to and from the right of way.  *See id*.

## D.   Claims administrator.

The claims administrator — Rust Consulting, Inc. of Minneapolis, Minnesota — will establish, conduct, and manage the claims-administration process.  Settlement at 3 (defining "Claims Administrator") and § V.A.1.  The claims administrator will carry out its responsibilities

in the most economical and cost-effective manner consistent with the Settlement.  *Id*. §  V.A.1.

Among the claims administrator's responsibilities are: (1) communicating with class members

concerning settlement procedures and claims, *id*. § V.A.2; (2) processing and tabulating requests

for exclusion from settlement classes, *id*. § V.A.3; and (3) receiving, processing, classifying, and

reviewing claims for benefits, *id*. § V.A.4.

## E.      Preliminary approval.

With respect to preliminary approval, the Settlement provides, *id*. § VI.A, for the Parties

to move the Court to, inter alia:

(1)      appoint Dennis Koyle, Charles K. Turner, and the Caravelle Corporation, Inc. as

class representatives;

(2)      appoint Settlement Class Counsel;

(3)      provisionally certify the Idaho class under Rules 23(b)(3) and 23(e), and

preliminarily approve the Settlement for purposes of issuing notice to class members;

(4)      schedule the fairness hearing, opt-out deadline, objection deadline, claim

deadline, and any other related dates and deadlines for inclusion in the notice; and

(5)      approve the form and content of the notice.  *See* Ex. 1, Tabs C (long-form

individual notice) and D (short-form publication notice).

## F.      Opt-out rights.

The Settlement class is an opt-out class under Rules 23(b)(3) and 23(c)(2), and any class

members may elect to exclude themselves from it.  Settlement at 8 (defining "Settlement Class");

*id*. at 6 (defining "Opt-Out Deadline").  The Settling Defendants have the right to withdraw from

the agreement for excessive opt-outs, *id*. § VII.B.3, but must exercise that right before the fairness hearing. *Id*.

## G.     Final approval.

The Settlement is subject to and conditioned upon the issuance by the Court, following the fairness hearing, of a Final Order and Judgment granting final approval in accordance with Rule 23(e), and other specified relief. Settlement § VIII.A; *see* Ex. 1, Tab E (proposed form of Final Order and Judgment). Among the relief provided for in the Final Order and Judgment is for the Court to: (1) approve the Settlement in all respects; (2) confirm the certification of the Settlement class under Rules 23(b)(3) and 23(e) for settlement purposes only; (3) determine that the Settlement is fair, reasonable, adequate, and in the best interests of class members; (4) release the Settling Defendants and other released parties from the Settlement claims, dismiss the Settlement claims, and bar and enjoin future suits arising out of the Settlement claims; and (5) direct the claims administrator to execute an easement under Rule 70 on behalf of all class members. Settlement § VIII.A.

## H.     Claims processing and payment of compensation to Class members

Promptly after the Order and Judgment becomes final, the claims administrator will mail notice to class members. Settlement § X.A.1; *see* Ex. F (notice of final approval).[7] To be eligible for benefits under the Settlement, class members must submit, before the claims deadline, an executed claim form and required accompanying documents. *Id*. § X.A.2. Class members have 120 days to submit their claims and supporting documentation. *Id*.

---

[7] Under the Settlement, "final" means: "with respect to an order or judgment, that no timely appeals have been taken or that all appeals or other rights of review have been exhausted and that the order or judgment has not been vacated, reversed, or modified as a result." Settlement at 4.

The claims administrator will process all claims and notify the Settling Defendants of those that tentatively qualify.  *Id*. § X.B.1.  For claims that do not qualify, the claims administrator will notify the claimant, explain why the claim did not qualify, and identify supplemental information that could support a request for reconsideration, which the Settlement expressly authorizes.  *Id*. § X.B.4.  A Settling Defendant will have sixty days to meet its burden of showing that no benefits are attributable to a claim by showing that the class member or a predecessor in title expressly granted the Settling Defendant permission to use the right of way for telecommunications purposes.  *Id*. § X.B.2 and II.B.6(a).  Upon return of a properly executed release  and easement, any class member who has submitted a qualified claim will be paid.  *Id*. § X.B.5.

**I.       Value of the Settlement and attorneys' fees**

Plaintiffs' Counsel estimate that the gross value of the Settlement is approximately $1.8 million.  A minimum of approximately $1.2 million in cash compensation is available for class members to claim; that amount can increase depending on the number of class members adjoining land-grant rights of way who seek and qualify for the higher non-land-grant benefits. The base amount is derived by multiplying the number of feet of land-grant and non-land-grant right of way covered by the Settlement by applicable benefit amounts.  As explained more fully below, the gross value of the Settlements also includes attorneys' fees and expenses of approximately $426,000 — or 24 percent of the Settlement's gross value — which the Settling Defendants have agreed to pay separately.  In addition, the administrative costs that the Settling Defendants anticipate incurring to create and update the landowner database, issue notice, implement the settlement, and manage the claim process in Idaho are estimated at approximately $171,000.

Upon final approval, Settlement Class Counsel may apply for, and the Settling

Defendants will not to object to, an award of attorneys' fees and expenses in a maximum

aggregate amount of up to $426,000.  Settlement at 5 (defining "Maximum Attorneys' Fee

Award"); *id*. § III.E.1.  The Settling Defendants have undertaken no obligation to pay an award

of attorneys' fees or expenses exceeding that amount.  *Id*. § II.E.4.  Each Settling Defendant is

obligated to pay only its *pro rata* portion of any fee and expense award, based on the number of

linear feet of right of way for which it is responsible under the Settlement.  *Id*. § II.E.3.  The fees

and expenses will not be paid from the Settlement fund and will not reduce the amount of cash

benefits available to any class member.  The awarded fees will be paid into an escrow account,

*id*. § II.E.2, and allocation of the attorneys' fees and expenses among Settlement Class Counsel

and counsel in other right-of-way cases, *see id*. §§ II.E.4 and II.E.5, is expected to be the subject

of a separate proceeding after the Court makes the requested fee-and-expense award.

## 5.    The Court should certify the Settlement class.

### A.    The Settlement class satisfies the four prerequisites for certification under Rule 23(a).

"Rule 23(a) states four threshold requirements applicable to all class actions: (1)

numerosity (a 'class [so large] that joinder of all members is impracticable'); (2) commonality

('questions of law or fact common to the class'); (3) typicality (named parties' claims or

defenses 'are typical . . . of the class'); and (4) adequacy of representation (representatives 'will

fairly and adequately protect the interests of the class').  *Amchem Products, Inc. v. Windsor*, 521

U.S. 591, 613 (1997).  "In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class

certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)."  *Id*. at

614.  This Court has already certified a litigation class against Level 3, finding the requirements

of Rules 23(a), (b)(2), and (b)(3) satisfied.  Mem. Decision and Order (Dec. 1, 2005) (Document No. 122).  The addition of Sprint as a Settling Defendant does nothing to change that conclusion.

In *Amchem*, the United States Supreme Court recognized that "[s]ettlement is relevant to class certification."  *Id*. at 619.  Specifically, the Court explained:  "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial."  *Id.* at 620 (citing Fed. R. Civ. P. 23(b)(3)(D)).  At the same time, "the district court must assess whether a class exists; '[s]uch attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold.'"  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) (quoting *Amchem*, 521 U.S. at 620).  Cognizant of this class-action jurisprudence, courts have certified settlement-only classes in similar litigation.  *See, e.g.*, *Uhl v. Thoroughbred Technology and Telecommunications, Inc.*, 2001 WL 987840, at *9 (S.D. Ind. Aug. 28, 2001), *aff'd*, 309 F.3d 978 (7th Cir. 2002) (multi-state fiber-optic-cable right-of-way litigation); *Hinshaw v. AT&T Corp.*, No. 29D01 9705-CP-000308, 1998 WL 1799019 (Ind. Super. Aug. 24, 1998) (nationwide fiber-optic-cable right-of-way litigation).

As set forth below, the settlement-only class for which the Parties seek certification satisfies the requirements of Rules 23(a), (b)(2), and (b)(3).

(1)      *Numerosity is satisfied.*

Under Rule 23(a)(1), a class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "In ruling on a class action, a judge may consider reasonable inferences drawn from facts before him at that stage of the proceedings and an appellate court will generally defer to the district court's determination that the class is

sufficiently numerous as to make joinder impractical." *Gay v. Waiters' & Dairy Lunchmen's Union*, 549 F.2d 1330, 1332 n.5 (9th Cir. 1997). Here, numerosity was satisfied with only class members adjoining Level 3 rights of way. *See* Mem. Decision and Order at 3 ("There is no dispute that [the numerosity] requirement is met."). There are even more class members with Sprint as a party. The class is likely to comprise hundreds or thousands of individuals, continuing to satisfy numerosity. *Cf. Rannis v. Recchia*, 380 Fed. App'x 646, 651 (9th Cir. 2010) ("In general, courts find the numerosity requirement satisfied when a class includes at least 40 members.").

(2)     *Commonality is satisfied.*

Under Rule 23(a)(2), there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "The test or standard for meeting the Rule 23(a)(2) prerequisite [of commonality] is qualitative rather than quantitative; that is, there need be only a *single* issue common to all members of the class." *Lewis v. First Am. Title Ins. Co.*, 265 F.R.D. 536, 555 (D. Idaho 2010) (internal quotation marks and citation omitted). The Ninth Circuit in particular construes Rule 23(a)(2) "permissively" and has described the "commonality preconditions of Rule 23(a)(2)" as "less rigorous than the companion requirements of Rule 23(b)(3)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

Plaintiffs have asserted that: (1) the Settling Defendants' common course of conduct in installing fiber-optic cable in railroad rights of way under agreements with railroads, without paying compensation to the adjacent landowners, provides a common issue out of which myriad common questions of fact and law arise; and (2) commonality is satisfied here because the main legal and factual issues are common for all class members. The Court has already agreed as to Level 3. *See* Mem. Decision and Order at 3 ("Here, the plaintiffs' basic claim is that Level 3 laid

fiber optic cable over their property without their permission.  That claim is common to all plaintiffs and all members of the proposed class.  This establishes commonality under the permissive standard of Rule 23(a)(2).").  The finding of commonality remains with the same basic claim against Sprint.

(3)      *Typicality is satisfied.*

Under Rule 23(a)(3), "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "The typicality requirement looks to whether the claims of the class representatives [are] typical of those of the class, and [is] satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Rodriguez v. Hayes*, 591 F.3d 1102, 1124 (9th Cir. 2010) (internal quotation marks and citation omitted).  Typicality does not require the claims to be "substantially identical." *Id.* "Like the commonality requirement, the typicality requirement is permissive and requires only that the representative's claims are reasonably co-extensive with those of absent class members." *Id.* (internal quotation marks and citation omitted).  Again, typicality remains satisfied with Sprint in the case. *See* Mem. Decision and Order at 4 ("Here, the named plaintiffs all own land in fee simple that is subject to a Union Pacific easement.  Level 3 has installed, and is operating, a fiber optic cable within these easement right-of-ways, but did not obtain the consent of the plaintiffs.  The named plaintiffs are thus in the same position as the proposed class members, and will be seeking the same relief.  Thus, the typicality requirement is satisfied.").

(4)     *Adequacy of representation is satisfied.*

Under Rule 23(a)(4), the representative parties must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The United States Supreme Court has recognized that "[t]he adequacy-of-representation requirement tend[s] to merge with the commonality and typicality criteria of Rule 23(a)." *Amchem,* 521 U.S. at 626 n.20 (internal quotation marks and citation omitted). The Ninth Circuit, in interpreting this rule, asks two questions: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Drimmer v. WD-40 Co.*, 343 Fed. App'x 219, 221 (9th Cir. 2009) (quoting *Staton*, 327 F.3d at 957)). The Court has already answered these questions and found adequacy of representation satisfied, and its conclusion holds with Sprint in the case. *See* Mem. Decision and Order at 4 ("Here, the resolution of these two questions leads to a conclusion that plaintiffs' counsel will provide adequate representation. No conflicts of interest have been identified, and the Court's experience with counsel to this point shows that counsel will vigorously prosecute this case.").

**B.     The Class satisfies the predominance and superiority requirements of Rule 23(b)(3).**

(1)     *Predominance is satisfied.*

In addition to satisfying the prerequisites of Rule 23(a), the class action must also be maintainable under Rule 23(b)(1), (2), or (3). Here, the Parties seek certification of the Settlement class under Rule 23(b)(3). That Rule provides that the Court must find that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods

for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  The Rule further provides that

> [t]he matters pertinent to the findings include:  (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and] (D) the difficulties likely to be encountered in the management of a class action.

*Id*.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S. at 594 (citation omitted).  Inasmuch as this is a settlement-only class action, however, Rule 23(b)(3)(D), relating to manageability, is inapposite:  "Rule 23(b)(3)(D), for example, states that 'the difficulties likely to be encountered in the management of a class action' are pertinent to the predominance inquiry.  Nonetheless, when '[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial.'"  *Amchem*, 521 U.S. at 620.

In *Ostler v. Level 3 Communications, Inc.*, Cause No. IP 00-0718-C H/K, 2002 WL 31040337 (S.D. Ind. Aug. 27, 2002), the district court denied certification of a statewide fiber-optic-cable right-of-way litigation class against Level 3 under Rule 23(b)(3) solely on manageability grounds, but reasoned that a settlement class would be certifiable.

> The court's analysis of the class issue in this case would not necessarily extend to a settlement class of the same definition.  "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . .  for the proposal is that there be no trial."  In fact, this court has certified several statewide settlement classes in very similar cases involving fiber optic cable laid by AT&T along abandoned railroad corridors, as part of a multidistrict litigation, *In re AT&T Fiber Optic Cable Litigation,* MDL No. 1313.

*Id*. at \*9 n.3 (quoting *Amchem*, 521 U.S. at 620). That reasoning applies with equal force here, as the Court has already found. *See* Mem. Decision and Order at 8-9 ("[A]t this stage of the litigation, there are substantial common issues that once resolved, may simplify the individual issues. Having examined all the Rule 23(b)(3) factors for determining whether common issue[s] predominate, the Court finds that common issues predominate over individual issues."). The addition of Sprint as a Settling Defendant has no impact on the predominance analysis.

(2)     *Superiority is satisfied.*

Finally, the proposed settlement classes satisfy Rule 23(b)(3)'s superiority requirement. The factors relevant to the inquiry include: "(A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b).

In *Local Joint Executive Board of Culinary/Bartender Trust Fund v. Las Vegans Sands, Inc.*, the Ninth Circuit explained that this requirement was easily satisfied, where the case "involve[d] multiple claims for relatively small individual sums." 244 F.3d 1152, 1163 (9th Cir. 2001). The court concluded that "[i]f plaintiffs cannot proceed as a class, some — perhaps most — will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover." *Id.* The Ninth Circuit has explained that the "superiority requirement[ ] [was] added to cover cases in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *In re Wells*

*Fargo Home Mortgage*, 571 F.3d 953, 958 (9th Cir. 2009) (internal quotation marks and citation omitted).  This requirement, too, remains satisfied.  *See* Mem. Decision and Order at 9 ("If this action was not certified as a class, each plaintiff would have to establish his or her own claim. . . . If the alternatives to a class resolution are massive filings or a mass surrender, the class resolution is clearly superior under Rule 23(b)(3).").  The addition of Sprint as a Settling Defendant makes class treatment even more superior to other available methods for adjudication.

## 6.      The Court should preliminarily approve the Settlement.

There is an "overriding public interest in settling and quieting litigation" and "[t]he Ninth Circuit is firmly committed to the rule that the law favors and encourages compromise settlements."  *Camacho v. City of St. Luis*, 359 Fed. App'x 794, 796 (9th Cir. 2009) (quoting *Ahern v. Cent. Pac. Freight Lines*, 846 F.2d 47, 48 (9th Cir. 1998)).  Indeed, the federal policy "to promote settlement" is "particularly true in class action suits."  *In re The Exxon Valdez*, 229 F.3d 790, 795 (9th Cir. 2000).

Among the factors to be considered on preliminary approval are: "(1) the risk, expense, complexity, and likely duration of further litigation;" . . . (3) the amount offered in settlement; (4) the extent of discovery completed and the stage of the proceedings."  *Hanlon*, 150 F.3d at 1026.  Notably, "[a]t the preliminary approval stage, the judge must either approve or disapprove the settlement.  He cannot rewrite the agreement."  *Id.*

Here, the Settlement was reached after extensive discovery, litigation, and appeals in many different suits against the Settling Defendants in courts around the country.  The proposed Settlement was reached after extraordinarily lengthy and painstaking arm's-length negotiations and mediation.  The proposed Settlement's cash compensation and other benefits are within the range of reasonableness for a fiber-optic-cable right-of-way class-action settlement.  And the

proposed attorneys' fees are reasonable as well, falling squarely within this Circuit's fee-award

parameters.  As set forth below in more detail, for those reasons, the Court should grant

preliminary approval to the Settlement.

A.    **The Settlement was reached after extensive discovery and litigation, consideration of the prospects if the case were tried, and extraordinarily lengthy and painstaking arm's-length negotiations.**

The history of the right-of-way litigation that is the subject of the Settlement spans back

to the 1990s.  In litigation in state and federal courts against the two Settling Defendants here and

against Qwest Communications and WilTel Communications, Plaintiffs' Counsel here obtained

and reviewed in discovery nearly 900,000 pages of documents; an additional 2.7 million pages

were produced by the railroads.  Those counsel took or defended more than three dozen

depositions.  Additional discovery was conducted in this case.  Plainly, "[e]xtensive discovery

had been conducted."  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009).  The

Parties waged several battles over class-certification as well.  Here, the Court certified a

litigation class against Level 3.

With this backdrop, the Parties began their negotiations following the Seventh Circuit's

reversal of the proposed *Smith* settlement.  Those negotiations were punctuated by the Seventh

Circuit's adequacy-of-representation concerns arising out of the exclusion from the initial

negotiations of counsel for already-certified litigation classes.  Further negotiations followed the

*Kingsborough* dismissal, predicated on the local-action doctrine.  The Parties were assisted by

Professor Green, who, in multiple mediation sessions in Boston and elsewhere over a three-year

period, finally helped bridge the gaps and reach the Settlement that is now before the Court.  In

short, all indicia point to a Settlement that was reached after extensive discovery, with due

consideration of the Parties' prospects going forward, and in hard-fought, arm's-length negotiations.

**B.      Cash compensation under the Settlement is within the range of reasonableness.**

The Parties bargained hard and reached agreement on different cash-compensation levels for the differing types of rights of way — i.e., land grant and non-land grant, based on Idaho law and the applicable federal land-grant statutes.  The Idaho non-land-grant benefits are $2.28 per foot.  Pre-1875 federal land-grant class members can receive $0.13 or $0.26 per foot of right of way, depending on whether they are "section" or "non-section" claimants, and 1875 federal land-grant class members can receive $1.25 per foot of right of way.  All land-grant class members are also allowed to seek the higher non-land-grant benefits, provided they can meet the Settlement's requirements, discussed above.

The cash-compensation levels are within the range of reasonableness, and, indeed, are meaningful sums for settlement of fiber-optic-cable right-of-way claims.  Settlements of earlier fiber-optic-cable right-of-way class actions against two other telecommunications-company defendants — in a litigation environment that Plaintiffs contend was better for them, owing to fewer adverse class-certification decisions and more demand for fiber-optic cable — commanded comparable amounts.  *See In re AT&T Fiber Optic Cable Installation Litig.*, 1:98-cv-1300-DFH-TAB (S.D. Ind.) (settling fiber-optic-cable right-of-way claims nationwide at gross range of $1.40 to $2.60 per foot, for gross weighted average of $2.00 per foot, before claims-related discounts); *Uhl*, 2001 WL 987840 (settling fifteen-state class at base compensation level of $1.16 per foot).  The comparatively lower per-foot land-grant figures here reflect the additional defenses available to the Settling Defendants under the statutes and case law interpreting them,

and the risk that the Settling Defendants' dispositive motions could lead to the defeat of all land-grant-based claims.

**C.      The proposed attorneys' fees are reasonable.**

Settlement Class Counsel may seek from the Court an aggregate cash award of attorneys' fees and expenses of up to $426,000 as compensation for services provided to, and expenses advanced on behalf of, the Settlement class.  The Settling Defendants will not object to Settlement Class Counsel's application for an aggregate award of fees and expenses in that amount. *See* Settlement § III.E.1.

Under the percentage-of-the-fund approach, the agreed-to attorneys'-fee request is reasonable as a matter of law.  Under that approach, it is appropriate to base the percentage on the gross cash benefits available for class members to claim, plus the additional benefits conferred on the class by the Settling Defendants' separate payment of attorneys' fees and expenses, and the expenses of administration. *See Boeing v. Gemert*, 444 U.S. 472, 479 (1980) ("Although the full value of the benefit to each absentee member cannot be determined until he presents his claim, a fee awarded against the entire judgment fund will shift the costs of litigation to each absentee in the exact proportion that the value of his claim bears to the total recovery."). In the Ninth Circuit, "[t]wo methods are available for determining attorneys' fees in 'common-fund' cases: (1) the percentage method and (2) the lodestar method." *Shaffer c. Cont'l Cas. Co.*, 362 Fed. App'x 627, 631 (9th Cir. 2010).  Indeed, the district court "exercise[s] . . . broad discretion" to determine and calculate a reasonable attorneys' fee. *See Yeagley v. Wells Fargo & Co.*, 365 Fed. App'x 886, 887 (9th Cir. 2010) (citing *Hanlon*, 150 F. 3d at 1029).  The district court "has discretion to use either a percentage or lodestar method." *Hanlon*, 150 F.3d at 1029 (citation omitted).

Plaintiffs' Counsel estimate that the agreed-to $426,000 fee-and-expense award is 24 percent of the entire fund and costs of administration, inclusive of attorneys' fees.  Plaintiffs' Counsel estimate that, based on the miles of rights of way covered by the Settlement, if each class member were to claim the available cash benefits, approximately $1.2 million would be paid to qualifying class members, assuming that no land-grant class members seek the higher non-land grant benefits.  (To the extent those class members do seek and receive the higher amounts, the amount available to the class will increase.)  When estimated administrative costs of $171,000 — to be borne by the Settling Defendants — and the agreed-to attorneys' fees of $426,000 are factored in, the gross value of the Settlements is approximately $1.8 million.  At substantially less than one third of the value of the fund as a whole — indeed, at 24 percent of its value — the fee and expense award would be well within the range of reasonable percentage-fee awards in this Circuit.  *See, e.g.*, *Fischel v. Equitable Life Assur. Soc'y of the U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002) ("We have established a 25 percent 'benchmark' in percentage-of-the-fund cases that can be adjusted upward or downward to account for any unusual circumstances involved in [the] case.") (internal quotation marks and citation omitted); *see also In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) ("[t]wenty-five percent is the 'benchmark' that district courts should award in common fund cases").[8]  Accordingly, the Court should preliminarily approve the unopposed fee and expense award of $426,000 here, which figure will appear in the notice.

---

[8] Given the Court's opportunity to observe the lengthy and hard-fought conduct of the litigation before it, it is reasonable to posit that, if the attorneys' fees requested were sought under a lodestar approach, they would also be justified.

**7.     The Court should approve the form and manner of notice.**

Under Rule 23(c)(2)(B), "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Due process does not require that a class member receive actual notice.  *Silber v. Mabon*, 18 F.3d 1449, 1453 (9th Cir. 1994).  Rather, "[p]otential class members must receive the 'best notice that is practicable under the circumstances.'"  *Shaffer*, 362 Fed. App'x at 631 (quoting Fed. R. Civ. P. 23(c)(2)).

The proposed form and manner of notice easily satisfies the requirements of Rule 23(c)(2).  As set forth in more detail in the Declaration of Katherine Kinsella of Rust Consulting, filed separately, the proposed notice program has two principal elements — (1) individual mailed long-form notice to all practicably identifiable class members (Ex. 1, Tab C) and (2) statewide publication of a summary notice (Ex. 1, Tab D) — coupled with a website where those documents and additional information will be available, as well as a toll-free telephone number to reach the claims administrator's offices.  When all class members cannot be identified through reasonable efforts, the best notice practicable standard may be satisfied by individual notice to those class members who reasonably can be identified and by published notice to the other class members.  *See, e.g.*, *Shaffer*, 362 Fed. App'x at 631 ("[T]he requirement was met because . . . class members received a concise notice that described the settlement benefits and the claims that class members would be required to release.  The notice also explained the procedures for selecting among benefit options, objecting to the settlement, and opting out of the settlement.").  Here, the mailed and published notice together readily satisfy the "best notice practicable under the circumstances" standard of Rule 23(c)(2).

# CONCLUSION

For the preceding reasons, the Court should certify the Settlement class, preliminarily

approve the Settlement, and approve the form and manner of notice.

Dated:  January 18, 2011                         Respectfully submitted,


/s/ Nels Ackerson                                /s/ Henry J. Price
Nels Ackerson                                    Henry J. Price
ACKERSON KAUFFMAN FEX, P.C.                      PRICE, WAICUKAUSKI & RILEY, LLC
1701 K Street, NW, Suite 1050                    301 Massachusetts Avenue
Washington, DC 20006                             Indianapolis, IN 46204


/s/ Kathleen C. Kauffman                         /s/ Dan Millea
Kathleen C. Kauffman                             Dan Millea
ACKERSON KAUFFMAN FEX, P.C.                      ZELLE, HOFMANN, VOELBEL &
1701 K Street, NW, Suite 1050                       MASON LLP
Washington, DC 20006                             500 Washington Avenue South, Suite 4000
                                                 Minneapolis, MN 55415


/s/ Brad P Miller                                /s/ Andrew W. Cohen
Brad P. Miller                                   Andrew W. Cohen
HAWLEY TROXELL ENNIS & HAWLEY LLP                KOONZ, MCKENNEY, JOHNSON,
877 Main Street, Ste 1000                           DEPAOLIS & LIGHTFOOT, L.L.P.
P.O. Box 1617                                    2001 Pennsylvania Avenue, N.W.
Boise, ID 83701-1617                             Suite 450
                                                 Washington, DC 20006


**PLAINTIFFS' COUNSEL, COUNSEL FOR THE LITIGATION CLASS CERTIFIED
FOR CLAIMS AGAINST LEVEL 3, AND APPLICANTS TO BE COUNSEL FOR THE
PUTATIVE LITIGATION CLASS THE CLASS COMPLAINT PRAYS TO HAVE
CERTIFIED FOR CLAIMS AGAINST SPRINT**


/s/ Irwin B. Levin                               /s/ Scott D. Gilchrist
Irwin B. Levin                                   Scott D. Gilchrist
Cohen & Malad, LLP                               Cohen & Malad, LLP
One Indiana Square, Suite 1400                   One Indiana Square, Suite 1400
Indianapolis, IN 46204                           Indianapolis, IN 46204

**PLAINTIFFS' COUNSEL AND APPLICANTS TO BE COUNSEL FOR THE PUTATIVE LITIGATION CLASS THE CLASS COMPLAINT PRAYS TO HAVE CERTIFIED FOR CLAIMS AGAINST SPRINT**