Brad P. Miller, ISB No. 3630
HAWLEY TROXELL ENNIS & HAWLEY LLP
877 Main Street, Suite 1000
P.O. Box 1617
Boise, ID 83701-1617
Telephone: (208) 344-6000
Facsimile: (208) 342-3829
Email:  bpm@hteh.com

John B. Massopust
Dan Millea
ZELLE HOFMANN VOELBEL & MASON LLP
500 Washington Avenue South, Suite 4000
Minneapolis, MN 55415
Telephone: (612) 339-2020
Facsimile: (612) 336-9100

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DENNIS KOYLE, CHARLES K. TURNER, and the CARAVELLE CORPORATION, INC. on behalf of themselves and all others similarly situated, | Case No. CIV-01-0286-S-BLW |
| Plaintiffs, | **DECLARATION OF KATHERINE KINSELLA** |
| v. | |
| LEVEL 3 COMMUNICATIONS, INC., a Delaware Corporation, LEVEL 3 COMMUNICATIONS, LLC, a Delaware Limited Liability Corporation, LEVEL 3 TELECOM HOLDINGS, INC., a Delaware Corporation, and SPRINT COMMUNICATIONS COMPANY, L.P., a Delaware Limited Partnership, | |
| Defendants. | |

I, Katherine Kinsella, being duly sworn, hereby declare as follows:

      1.      I am President of Kinsella Media, LLC ("KM"), an advertising and legal notification firm in Washington, D.C. specializing in the design and implementation of class

action and bankruptcy notification programs to reach unidentified putative class members primarily in consumer and mass tort litigation.  My business address is 2120 L Street, NW, Suite 860, Washington, D.C. 20037.  My telephone number is (202) 686-4111.

2.      I submit this declaration at the request of Counsel in connection with *Koyle v. Level 3 Communications, Inc.* pending in the United States District Court for the District of Idaho.

3.      This declaration is based upon my personal knowledge and upon information provided by Counsel, my associates, and staff.  The information is of a type reasonably relied upon in the fields of advertising, media and communications.

4.      KM has developed and directed some of the largest and most complex national notification programs in the country.  The scope of the firm's work includes notification programs in antitrust, bankruptcy, consumer fraud, mass tort and product liability litigation. Specific cases have involved, among others, asbestos, breast implants, home siding and roofing products, infant formula, pharmaceuticals, polybutylene plumbing, tobacco and Holocaust claims.  The firm has developed or consulted on over 700 notification programs and has placed over $240 million in media notice. Selected cases are attached hereto as Exhibit A.

5.      Courts have commented favorably, on the record, regarding the effectiveness of notice programs prepared by KM.  Selected Judicial Comments are attached hereto as Exhibit B.

6.      I have testified as an expert at trial and in a deposition in *Engle v. R. J. Reynolds Tobacco*, No. 94-08273 (Fla. Cir. Ct., Dade County).  I have been deposed as an expert in *In re NASDAQ Market-Makers Antitrust Litigation*, M21-68 RWS), 94-CIV. 3994 (RWS), M.D.L. No. 123 (S.D.N.Y.), *In re Dow Corning*, No. 95-20512 (Bankr. E.D. Mich.), *Georgine v. Amchem, Inc. et al.,* C.A. No. 93-CV-0215 (E.D. Pa.), *In re W. R. Grace & Co.*, Chapter 11, No.01-01139 (JJF) (Bankr. D. Del.) and *Gross v. Chrysler Corp.,* No. 061170 (Md. Cir. Ct., Montgomery County).  I have testified in court in *In re Swan Transportation Company*, Chapter 11, Case No. 01-11690, *Cox v. Shell Oil Co.,* No. 18,844 (Tenn. Ch. Ct., Obion County), *Ahearn v. Fibreboard Corporation*, C.A. No. 6:93cv526 (E.D. Tex.) and *Continental Casualty Co. v. Rudd,* C.A. No. 6:94cv458 (E.D. Tex.).

7.      I am the author of *Class Notice and Claims* Administration, published in 2010 in The International Handbook on Private Enforcement of Competition Law, *The Plain Language Tool Kit for Class Action Notice* published in the October 25, 2002 issue of Class Action

<u>Litigation Report</u> and the author of *Quantifying Notice Results in Class Actions – the Daubert/Kumho Mandate* published in the July 27, 2001 issue of <u>Class Action Litigation Report</u> and the August 7, 2001 issue of <u>The United States Law Week</u>, both publications of the Bureau of National Affairs, Inc.  In addition, I am author of *The Ten Commandments of Class Action Notice* published in the September 24, 1997 issue of the <u>Toxics Law Reporter</u> and co-author of *How Viable Is the Internet for Class Action Notice* published in the March 25, 2005 issue of <u>Class Action Litigation Report</u>, both also publications of the Bureau of National Affairs, Inc.

8.      KM was retained to design and implement the Proposed Class Action Settlement Notice Program in this litigation.  I submit this declaration to describe the elements of the Notice Program.

### Proposed Notice Program

9.      The objective of the Notice Program is to provide adequate notice of the Settlement to members of the Proposed Idaho Settlement Class ("Class Members").  Class Members include all persons possessing or claiming to possess, for any period of time during the Compensation Period,[1] an interest in land in eight counties in Idaho (Minidoka, Lincoln, Gooding, Elmore, Ada, Canyon, Kootenai, and Bonner) that is next to or under a railroad Right of Way where Telecommunications Facilities have been installed by Sprint or Level 3.

10.     A four-part notification program was designed and includes:

    (a.)    Direct notice by first-class mail to known Class Members.

    (b.)    Published notice through the use of paid media in state newspapers.

    (c.)    Notice through a national earned media campaign.

    (d.)    Electronic notice through a dedicated website.

### Direct Notice

11.     Direct mail notice will consist of mailing the Long Form Notice to potential Class Members to inform them of their rights and how they may participate in the class action.  This direct notice will be sent to:

    (a.)    Class Members who (i) have been identified as owners of Covered Property by Data Mapping Solutions, LLC ("DMS"), from the tax rolls

---

[1] Capitalized terms that are not defined here are defined in the Settlements.

and, where necessary, other real property records of each county in which a Designated Right of Way is located or (ii) request mailed notice.

(b.)    Class Members who call the toll-free information line and request the Long Form Notice.  The toll-free number for this information line will appear prominently in the published forms of notice.  Class Members may also download the Notice in PDF format from the Settlement website.

12.    Based on our analysis of the available Class Member data, we estimate that direct notice will reach approximately 69% of the Class.

## Paid Media

13.    To design the paid media segment of the notice program, KM selected demographics that encompass the characteristics of proposed Settlement Class Members.  Media vehicles were then analyzed and selected for their strength and efficiency in reaching these demographic targets.

14.    For the purpose of developing profiles of the demographics and media habits of Settlement Class Members, KM analyzed syndicated data available from the GfK MRI's 2010 *Doublebase Study*.[2]  GfK MRI is a nationally accredited media and marketing research firm that provides syndicated data on audience size, composition, and other relevant factors pertaining to major media including broadcast, magazines, newspapers, and outdoor advertising.  GfK MRI provides a single-source measurement of major media, products, services, and in-depth consumer demographic and lifestyle/psychographic characteristics.

15.    GfK MRI provides specific data that will allow us to provide a reach of both residential and commercial property owners.  Using this information, an audience was chosen that encompass these demographics. The media plan is based on reaching these specific consumers and not the general public.  All media purchased will be measured against the target as indicated below.

---

[2] GfK MRI was known until mid-2010 as Mediamark Research & Intelligence (MRI).  The *Doublebase Study* is based on GfK MRI's national *Survey of the American Consumer*, conducted since 1979, which surveys people 18 years of age and older in the contiguous 48 states.  GfK MRI conducts more than 26,000 personal interviews with consumers in two waves annually, each lasting six months and consisting of 13,000 interviews.  Produced annually, the *Doublebase Study* consists of two full years of data drawn from over 50,000 survey respondents. Consumer information is recorded on 500 product/service categories, 6,000 brands, and various lifestyle activities.  Respondents are selected based on the ability to project their responses nationally.  The survey results are sample-based.  Therefore, estimates of audience and/or demographics from these surveys are subject to sampling and non-sampling error.  The use of mathematical values from those surveys should not be regarded as a representation that they are exact to the precise mathematical value stated.

16.    The demographic target is as follows[3]:    Idaho Homeowners ("Idaho Homeowners").

17.    The proposed media schedule includes advertising in the weekday and Sunday editions of all major newspapers in Idaho.[4]  Notice will appear in a one-quarter page ad in the following 13 newspapers:  *Bonner County Daily Bee*, *Cour D'Alene Press*, *Idaho Press Tribune*, *Idaho State Journal*, *Idaho Statesman*, *Lewiston Tribune*, *Blackfoot Morning News*, *Moscow-Pullman Daily News*, *Ontario Argus Observer*, *Idaho Falls Post Register*, *Shoshone News Press*, *Spokane Spokesman Review, and Twin Falls Times-News*.

18.    An analysis of identifiable Class Members revealed that approximately 5% of the Class moved out-of-state between 2000 and 2010.  Given this low out-of-state move rate for a ten-year period and the dispersal of movers to many different states, the use of national media to reach these movers would be cost prohibitive and unreasonable.  Therefore, in-state media will be used.

### Earned Media

19.    The Notice Program will also include earned media to augment the paid media plan and provide a mechanism to get information about the Settlement to Class Members who moved out of state.

20.    A press release will be distributed on PR Newswire's US1 Newsline reaching almost 6,000 print and broadcast media outlets, as well as more than 5,500 online media outlets.

21.    The press release will also be sent to approximately 649 publications nationwide targeted to reach rural landowners including farmers.

### Electronic Notice

22.    A dedicated website will be established and listed with major search engines to enable Class Members to get information on the Proposed Settlement.

---

[3] Idaho is not measured individually in Gfk MRI.  It is part of Gfk MRI's Montana/Idaho/Wyoming and Colorado State group code.  The reach reported within the Montana/Idaho/Wyoming and Colorado State Group Code is reflective of the entire state group and not of the individual states within the code so it is not possible to break out individual states from the predetermined code groups.  For purposes of this analysis, the reach of the Montana/Idaho/Wyoming and Colorado State Group Code is expected to be representative of the reach to Idaho.
[4] There will be two weekday insertions for any paper that does not have a Sunday edition.

**Reach of the Target Audience**

23.     For the purpose of evaluating the strength and efficiency of the media, the newspapers were measured against the demographic targets to establish the estimated *reach*[5] of the media program and the estimated *frequency*[6] of exposure to the media vehicles.  The media will reach an estimated 57.6% of Idaho Homeowners with an average estimated frequency of 1.2 times.

24.     The paid media, in conjunction with direct notice is estimated to reach over 86% of the Class.

25.     Measured media indicates that Class Members who are commercial or large landowners are being reached at a comparable rate.

**Content and Form of Notices**

26.     Attached as Exhibits C, D, and E are copies of the Summary Notice, the Long Form Notice, and a depiction of the outside of the mailing.

27.     Rule 23(c)(2) of the Federal Rules of Civil Procedure requires class action notices to be written in "plain, easily understood language."  KM applies the plain language requirement in drafting notices in federal and state class actions.  The firm maintains a strong commitment to adhering to the plain language requirement, while drawing on its experience and expertise to draft notices that effectively convey the necessary information to Class Members.

28.     The Summary Notice for publication is designed to get the reader's attention.  No important or required information is missing or omitted.  In fact, this Notice concisely and clearly states, in plain easily understandable language, all required information, without omitting significant facts that Class Members need to understand their rights.  The Summary Notice refers readers to the availability of a Long Form Notice, which is available to those who call or visit the website.

---

[5] Reach is the estimated percentage of a target audience reached through a specific media vehicle or combination of media vehicles.
[6] Frequency is the estimated average number of times an audience is exposed to an advertising vehicle carrying the message.

29.     The Long Form Notice will be mailed to all known Class Members and will be available at the website or by calling the toll-free number.  The Long Form Notice provides substantial information, including all specific instructions Class Members need to follow to properly exercise their rights, and background on the issues in the case.  It is designed to encourage readership and understanding, in a well-organized and reader-friendly format.

## **Conclusion**

30.     It is my opinion that the reach of the target audiences and the number of exposure opportunities to the notice information is adequate and reasonable under the circumstances, and it is consistent with the standards employed by KM in notification programs designed to reach unidentified members of settlement groups or classes.  The Notice Program as designed is fully compliant with Rule 23 of the Federal Rules of Civil Procedure.


I declare under penalty of perjury under the laws of the State of Idaho that the foregoing is true and correct.  Executed on January 21, 2011.

Katherine Kinsella

# EXHIBIT A



# Kinsella Media, LLC

## Judicial Comments

*In re Compact Disc Minimum Advertised Price Antitrust Litigation*, MDL No. 1361 (D. Me.).

In approving the notice plan for implementation in the Compact Disc Minimum Advertised Price Antitrust Litigation, Judge D. Brock Hornby stated, "(the plan) provided the best practicable notice under the circumstances and complied with the requirements of both 15 U.S.C. 15c(b) (1) . . . the notice distribution was excellently designed, reasonably calculated to reach potential class members, and ultimately highly successful in doing so." - Hon. D. Brock Hornby (2002/2003)

*In re International Air Transportation Surcharge Antitrust Litigation*, No. M 06-1793, MDL No. 1793 (N.D. Cal.).

In approving the notice plan in this litigation that involved a proposed settlement of more than $200 million for U.S. and U.K. class members, U.S. District Judge Charles Breyer repeatedly praised KNC: "I think the notice is remarkable in this case. . . . This is brilliant.  This is the best notice I've seen since I've been on the bench. . . . Turning back to the settlement, again I want to applaud the parties for the notice.  I mean it's amazing.  You know, it really is good.  And I don't know where this person practices, I don't even know that she's a lawyer.  But she really did a good job on this announcement, this notice. So thank you very much. . . . And I once again want to express my sincere appreciation of the notice.  I mean, I was just extraordinarily impressed.  Extraordinarily impressed." – Hon. Charles Breyer (2008)

*Cox v. Shell Oil Co.*, No. 95-CV-2 (Tenn. Ch. Ct. Obion County)

In the order approving the settlement of the polybutylene pipe class action, Judge Maloan stated, "The Court finds the notice program is excellent.  As specified in the findings below, the evidence supports the conclusion that the notice program is one of the most comprehensive class notice campaigns ever undertaken." (1995)

*Galanti v. The Goodyear Tire & Rubber Co.*, No. 03-209 (D.N.J.)

"The published notice, direct notice and Internet posting constituted the best practicable notice of the Fairness Hearing, the proposed Amended Agreement, Class Counsels' application for fees, expenses and costs, and other matters set forth in the Class Notice and the Summary Notice.  The notice constituted valid, due and sufficient notice to all members of the Settlement Classes, and complied fully with the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Constitution of the United States, the laws of New Jersey and any other applicable law." – Hon. Stanley R. Chesler (2004)

*Azizian v. Federated Department Stores, Inc.*, No. 3:03 CV-03359  (N.D. Cal.).

"The notice was reasonable and the best notice practicable under the circumstances; was due, adequate and sufficient notice to all class members; and complied fully with the laws of the United States and of the Federal Rules for Civil Procedure, due process and any other applicable rules of court."  - Hon. Sandra Brown Armstrong  (2004)

*Collins v. Pension Benefit Guarantee Corp.*, No. 88-3406 (D.D.C.).

"The notice provided was the best notice practicable under the circumstances.  Indeed, the record shows that the notice given was consistent with the highest standards of compliance with Rule 23(e)." (1996)

*Cox v. Microsoft Corporation*, No. 105193/00 (N.Y. Sup. Ct. N.Y. County).

"The court finds that the combination of individual mailing, e-mail, website and publication notice in this action is the most effective and best notice practicable under all the circumstances, constitutes due, adequate and reasonable notice to all Class members and otherwise satisfies the requirements of CPLR 904, 908 and other applicable rules.  The Settlement meets the due process requirement for class actions by providing Class members an opportunity either to be heard and participate in the litigation or to remove themselves from the Class." - Hon. Karla Moskowitz  (2006)

*Foothill/De Anza Community College District v. Northwest Pipe Co.,* No. CV-00-20749 (N.D. Cal.)

"The Court finds that the settling parties undertook a thorough and extensive notice campaign designed by Kinsella/Novak Communications, Ltd., a nationally-recognized expert in this specialized field.  The Court finds and concludes that the Notice Program as designed and implemented provides the best practicable notice to the Class, and satisfied requirements of due process." - Hon. Jeremy Fogel (2004)

*Georgine v. Amchem*, 158 F.R.D. 314, 326 (E.D. Pa.).

Judge Reed explained that the notice program developed by Kinsella "goes beyond that provided in [previous cases]" and "the efforts here are more than adequate to meet the requirements of Rule 23(c)(2)." (1993)

*Higgins v. Archer-Daniels Midland Co.,* Second Judicial District Court, County of Bernalillo C-202-CV-200306168 (N.M. 2d Jud. Dist. Bernalillo County)

"The Court finds that the form and method of notice given to the Settlement Class, including both mailed notice to persons and firms for whom such notice was practical and extensive notice by publication through multiple national and specialized publications, complied with the requirements of



Rule 1-023 NMRA 2006, satisfied the requirements of due process, was the best notice practicable under the circumstances, and constituted due and sufficient notice of the Settlement Agreements and their Final Approval Hearing, and other matters referred to in the Notice.  The notice given to the Settlement Class was reasonably calculated under the circumstances to inform them of the pendency of the actions involved in this case, of all material elements of the proposed Settlements, and of their opportunity to exclude themselves from, object to, or comment on the Settlements and to appear at the Final Approval Hearing." -Hon. William F. Lang  (2006)

*In re The Celotex Corporation,* Nos. 90-10016-8B1 and 90-10017-8B1 (Bankr. M.D. Fla.).

"...all counsel should be complimented on the fact that they have gone to every possible conceivable method of giving notice from putting it on TV and advertising it in papers..... the record should also reflect the Court's appreciation to Ms. Kinsella for all the work she's done, not only in pure noticing, but ensuring that what noticing we did was done correctly and professionally." - Hon. Thomas E. Baynes, Jr.

*Ahearn v. Fibreboard Corp.,* No. 6:93 cv526 (E.D. Tex.); *Continental Casualty Co. v. Rudd,* No. 6:94cv458 (E.D. Tex.).

In approving the notice plan for implementation in the Ahearn and Rudd class actions in 1994, Judge Parker stated, "I have reviewed the plan of dissemination, and I have compared them to my knowledge at least of similar cases, the notices that Judge Weinstein has worked with [Agent Orange] and Judge Pointer [Silicon Gel Breast Implants], and it appears to be clearly superior." - Chief Judge Robert M. Parker (1994)

*In re Western States Wholesale Natural Gas Antitrust Litigation,* No. CV-03-1431, MDL No. 1566, (D. Nev) (natural gas).

"This notice program fully complied with Federal Rule of Civil Procedure 23 and the requirements of due process.  It provided to the MDL Class the best notice practicable under the circumstances." - Hon. Philip M. Pro (2007)

*Johns-Manville Corp.*  68 B.R. 618, 626 (Bankr. S.D.N.Y. 1986), aff'd, 78 B.R. 407 (S.D.N.Y. 1987), aff'd sub nom. *Kane v. Johns-Manville Corp.*  843 F.2d. 636 (2d Cir. 1988).

In approving the notification plan in the Johns-Manville Bankruptcy Reorganization, the court referred to it as "an extensive campaign designed to provide the maximum amount of publicity ... that was reasonable to expect of man and media." - Hon. Burton Lifland  (1996/1998)

*Lovelis v. Titeflex Corp.,* No. CIV-2004-211 (Ark. 9th Cir. Ct. Clark Co.)



"Accordingly, the Notice as disseminated is finally approved as fair, reasonable, and adequate notice under the circumstances.  The Court finds and concludes that due and adequate notice of the pendency of this Action, the Stipulation, and the Final Settlement Hearing has been provided to members of the Settlement Class, and the Court further finds and concludes that the Notice campaign described in the Preliminary Approval Order and completed by the Parties complied fully with the requirements of Arkansas Rule of Civil Procedure 23 and the requirements of due process under the Arkansas and United States Constitutions.  The Court further finds that the Notice campaign undertaken concisely and clearly states in plain, easily understood language:

     (a.)     the nature of the action;

     (b.)     the definition of the class certified;

     (c.)     the class claims, issues or defenses;

     (d.)     that a Class Member may enter an appearance and participate in person or through counsel if the member so desires;

     (e.)     that the Court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and

     (f.)     the binding effect of the Final Order and Judgment on Class Members.

- Hon. John A. Thomas

*Naef v. Masonite Corp*., No. CV-94-4033 (Ala. Cir. Ct. Mobile County)

"In November, 1997, the Court approved a massive Notice Program to apprise class members of the class action Settlement, including the individually mailed, notices, publication notice and notification by way of other avenues nationally and locally.  This Notice Program was designed by recognized experts, approved by the mediator and the Court, and implemented diligently by the parties, at defendants' cost.  It provided the best notice practicable to the Class, comports with due process, and was clearly adequate under Alabama Rule of Civil Procedure 23(e), the United States Constitution, and other applicable law."  - Hon. Robert G. Kendall (1997)



# EXHIBIT B



# Kinsella Media, LLC

## Relevant Case Experience

**Antitrust**

*Big Valley Milling, Inc. v. Archer Daniels Midland Co.,* No. 65-C2-96-000215 (Minn. Dist. Ct. Renville County) (lysine).

*Carlson v. Abbott Laboratories*, No. 94-CV-002608 (Wis. Cir. Ct. Milwaukee County) (infant formula).

*Comes v. Microsoft Corp.,* No. CL8231 (Iowa Dist. Ct. Polk County

*Connecticut v. Mylan Laboratories, Inc.,* No. 99-276, MDL No. 1290 (D.D.C.)  (pharmaceutical).

*Conroy v. 3M Corp.*, No. C-00-2810 CW (N.D. Cal.) (invisible tape).

*Copper Antitrust Litigation,* MDL 1303 (W.D. Wis.) (physical copper).

*Cox v. Microsoft Corp.,* No. 105193/00 (N.Y. Sup. Ct. N.Y. County) (software).

*D.C. 37 Health  & Security Plan v. Medi-Span*, No. 07-cv-10988 (D.Mass.); *New England  Carpenters Health Benefits Fund v. First DataBank, Inc.,* No. 1:05-CV-11148 (D. Mass.) (pharmaceutical).

*Giral v. Hoffman-LaRoche Ltd.*, C.A. No. 98 CA 7467 (W. Va. Cir. Ct., Kanawha County) (vitamins).

*In re Buspirone Antitrust Litigation*, MDL No. 1413 (S.D.N.Y.) (pharmaceutical).

*In re Cardizem Antitrust Litigation*, 200 F.R.D. 326 (E.D. Mich.) (pharmaceutical).

*In re Compact Disc Minimum Price Antitrust Litigation*, MDL No. 1361 (D. Me.) (compact discs).

*In re Insurance Brokerage Antitrust Litig.*, MDL No. 1663 Civil No. 04-5184 (FSH) (D.N.J.) (insurance).

*In re International Air Transportation Surcharge Antitrust Litigation*, No. M 06-1793, MDL No. 1793 (N.D. Cal.) (airline fuel surcharges).

*In re Monosodium Glutamate Antitrust Litig.,* D-0202-CV-0200306168, D-202-CV-200306168 (N.M. Dist. Ct., Bernalillo County) (MSG).

*In re Motorsports Merchandise Antitrust Litigation,* No. 1:97-CV-2314-TWT (N.D. Ga.) (merchandise).

*In re Nasdaq Market-Makers Antitrust Litigation*, MDL No. 1023 (S.D.N.Y.) (securities).

*In re Pharmaceutical Industry Average Wholesale Price Litigation*, No. CA:01-CV-12257, MDL No. 1456 (D. Mass.) (pharmaceutical).

*In re Toys "R" Us Antitrust Litigation*, No. CV-97-5750, MDL No. 1211, (E.D.N.Y.)  (toys and other products).

*In re Western States Wholesale Natural Gas Antitrust Litigation*, No. CV-03-1431, MDL No. 1566, (D. Nev) (natural gas).

*Kelley Supply, Inc. v. Eastman Chemical Co*., No. 99CV001528 (Wis. Cir. Ct., Dane County) (Sorbates).

*Ohio vs. Bristol-Myers Squibb, Co*., No. 1:02-cv-01080 (D.D.C.) (pharmaceutical).

*Raz v. Archer Daniels Midland Co.,* Inc., No. 96-CV-009729 (Wis. Cir. Ct. Milwaukee County) (citric acid).

## Consumer and Product Liability

*Azizian v. Federated Department Stores, Inc.,* No. 4:03 CV-03359 (N.D. Cal.)  (cosmetics).

*Baird v. Thomson Consumer Elecs.,* No. 00-L-000761 (Ill. Cir. Ct., Madison County) (television).

*Bonilla v. Trebol Motors Corp.,* No. 92-1795 (D.P.R.) (automobiles).

*Burch v. American Home Products Corp.,* No. 97-C-204 (1-11) (W. Va. Cir. Ct., Brooke County) (Fen Phen).

*Cosby v. Masonite Corp., No.* CV-97-3408 (Ala. Cir. Ct. Mobile County) (siding product); *Quin v. Masonite Corp.,* No. CV-97-3313 (Ala. Cir. Ct. Mobile County) (roofing product).

*Cox v. Shell Oil Co.,* No. 18,844 (Tenn. Ch. Ct. Obion County) (polybutylene pipe).

 *Daniel v. AON Corp.,* No. 99 CH 11893 (Ill. Cir. Ct. Cook County) (insurance).

*Fettke v. McDonald's Corp.,* No. 044109 (Cal. Super Ct. Marin County) (trans fatty acids).



*Florida v. Nine West Group, Inc.,* No. 00 CIV 1707 (S.D.N.Y.) (shoes).

*Foothill/De Anza Community College Dist. v. Northwest Pipe Co.,* No. 00-20749-JF(N.D. Cal.) (fire sprinklers).

*Galanti v. The Goodyear Tire & Rubber Company,* No. 03-209 (D.N.J.) (radiant heating) (2002).

*Garza v. Sporting Goods Properties, Inc.,* No. SA 93-CA-1082 (W.D. Tex.) (gun ammunition).

*Hoorman v. GlaxoSmithKline,* No. 04-L-715 (Ill. Cir. Ct., Madison Cty.) (Paxil pharmaceutical*).*

*In re Louisiana Pacific Corp. Inner Seal OSB Trade Practices Litigation,* MDL No. 1114 (N.D. Cal.) (oriented strand board).

*In re Tri-State Crematory Litig,* MDL 1467 (N.D. Ga.) (improper burial).

*Lebrilla v. Farmers Group Inc.,* No. 00-CC-07185 (Cal. Super. Ct., Orange County) (auto insurance).

*Lovelis v. Titflex,* No. 04-211 (Ak. Cir. Ct., Clark County) (gas transmission pipe).

*Naef v. Masonite Corp.,* No. CV-94-4033 (Ala. Cir. Ct. Mobile County) (hardboard siding product).

*Peterson v. BASF Corp.,* No. C2-97-295 (D. Minn.) (herbicide).

*Posey v. Dryvit Sys., Inc.* No. 17,715-IV (Tenn. Cir. Ct., Jefferson County) (EIFS stucco).

*Reiff v. Epson America, Inc. and Latham v. Epson Am., Inc.,* J.C.C.P. No. 4347 (Cal. Super. Ct., L.A. County) (ink jet printers).

*Richison v. Weyerhaeuser Company Limited,* No. 05532 (Cal. Super. Ct. San Joaquin County) (roofing product).

*Ruff v. Parex, Inc.,* No. 96-CvS 0059 (N.C. Super. Ct. Hanover County) (synthetic stucco product).

*Shah v. Re-Con Building Products, Inc.,* No. C99-02919 (Cal. Super. Ct. Contra Costa County) (roofing product).

*Shields vs. Bridgestone/Firestone, Inc., Bridgestone Corp.,* No. E-167.637 (D. Tex.) (tires).

*Smith v. Behr Process Corp.,* No. 98-2-00635 (Wash. Super. Ct., Gray Harbor County) (stain product).



*Weiner v. Cal-Shake, Inc., J.*C.C.P. No. 4208 (Cal. Super. Ct., Contra Costa County) (roofing product).

*Wholesale Elec. Antitrust Cases I & II,* J.C.C.P. Nos. 4204 & 4205 (Cal. Super. Ct., San Diego County) (energy).

*Woosley v. State of California,* No. CA 000499 (Cal. Super. Ct., Los Angeles County) (automobiles).

## Mass Tort

*Ahearn v. Fibreboard Corp.,* No. 6:93cv526 (E.D. Tex); *Continental Casualty Co. v. Rudd*, No. 6:94cv458 (E.D. Tex) (asbestos injury).

*Backstrom v. The Methodist Hospital,* No. H.-94-1877 (S.D. Tex.) (TMJ injury).

*Engle v. RJ Reynolds Tobacco Co.,* No. 94-08273 (Fla. Cir. Ct. Dade County) (tobacco injury).

*Georgine v. Amchem, Inc.,* No. 93-CV-0215 (E.D. Pa.) (asbestos injury).

## Bankruptcies

*In re Armstrong World Industries, Inc.,* No. 00-4471 (Bankr. D. Del.).

*In re Dow Corning,* No. 95-20512 (Bankr. E.D. Mich.) (breast implants).

*In re Johns-Manville Corp.,* 68 B.R. 618, 626 (Bankr. S.D.N.Y.) (asbestos).

*In re Kaiser Aluminum Corp.,* No. 02-10429 (JFK) (D. Del).

*In re Owens Corning,* No. 00-03837 (Bankr. D. Del.).

*In re Raytech Corp.,* No. 5-89-00293 (Bankr. D. Conn.) (asbestos).

*In re The Celotex Corp.,* Nos. 90-10016-8B1 and 90-10017-8B1 (Bankr. M.D. Fla.) (asbestos).

*In re U.S. Brass Corp.,* No.94-40823S (Bankr. E.D. Tex.) (polybutylene).

*In re USG Corp.,* Nos. 01-2094 - 01-2104 (Bankr. D. Del.).

*In re W.R. Grace & Co.,* No. 01-01139 (Bankr. D. Del.).



## Insurance

*McNeil v. American General Life and Accident Insurance Co.,* No. 8-99-1157 (M.D. Tenn.) (insurance).

*Nealy v. Woodmen of the World Life Insurance Co.,* No. 3:93 CV-536 (S.D. Miss.) (insurance).

## Holocaust Victims Reparations

*In re Holocaust Victim Assets Litigation,* Nos. CV 96-4849, CV-5161 and CV 97-461 (E.D.N.Y.) (Holocaust).

The International Commission on Holocaust Era Insurance Claims Outreach

## Pension Benefits

*Collins v. Pension Benefit Guarantee Corp.,* No. 88-3406 (D.D.C.); Page v. Pension Benefit Guarantee Corp., No. 89-2997 (D.D.C.).

*Forbush v. J. C. Penney Co., Inc.,* Nos. 3:90-2719 and 3:92-0109 (N.D. Tex.).

## International

*Ahearn v. Fiberboard Corporation,* No. 6:93cv526 (E.D. Tex) and *Continental Casualty Co. v. Rudd,* No. 6:94cv458 (E.D. Tex.) (asbestos injury) (1993).

*Galanti v. The Goodyear Tire & Rubber Company,* No. 03-209 (D.N.J.) (radiant heating) (2002).

*In re Holocaust Victims Assets Litigation,* No. CV 96-4849 (ERK) (MDG) (Consolidated with CV-5161 and CV 97461) (E.D.N.Y.) (2003).

*In re Owens Corning, Chapter 11,* No. 00-03837 (MFW) (Bankr. D. Del.) (2006).

*In re The Celotex Corporation, Chapter 11,* Nos. 90-10016-8B1 and 90-10017-8B1 (Bankr. M.D. Fla.) (1996).

*In re USG Corporation, Chapter 11,* Nos. 01-2094 (RJN) through 01-2104(RJN) (Bankr. D. Del.) (2006).

*In re Western Union Money Transfer Litigation,* No. 01 0335 (CPS) (VVP) (E.D.N.Y.) (wire transactions) (2004).

*In re W.R. Grace & Co., Chapter 11,* No. 01-01139 (Bankr. D. Del.) (bankruptcy) (2001).



International Committee on Holocaust Era Insurance Claims (1999).

## Product Recall

Central Sprinkler Voluntary Omega Sprinkler Replacement Program

*Hart v. Central Sprinkler Corp.,* No. BC17627 (Cal. Super. Ct. Los Angeles County) & *County of Santa Clara v. Central Sprinkler Corp., No.* CV 17710119 (Cal. Super. Ct. Santa Clara County)

## Telecom

*Bidner, et al. v. LCI International Telecom Corp d/b/a Qwest Communications.*

*Community Health Association v. Lucent Technologies, Inc.,* No. 99-C-237, (W.Va. Cir. Ct., Kanawha County).

*Cundiff et al. v. Verizon California, Inc.,* No. 237806 (Cal. Super Ct., Los Angeles County).

*Kushner v. AT&T Corporation,* No. GIC 795315 (Cal. Super. Ct., San Diego County).

*Rish Enterprise v. Verizon New Jersey,* No. MID-L-8946-02 (N.J. Super. Ct.).

*Sonnier, et. al. v. Radiofone, Inc.,* No. 44-844, (L.A. Jud. Dist. Ct., Plaquemines Parish County).

*State of Louisiana v. Sprint Communications Company L.P.,* No. 26,334 (Jud. Dis. Ct., Parish of West Baton Rouge) and *State of Louisiana v. WilTel, Inc.,* No. 26,304 (Jud. Dis. Ct., Parish of West Baton Rouge).



# EXHIBIT C

## EXHIBIT D

**If You Own or Owned Land Under or Next to Railroad Rights of Way In Idaho Where Fiber Optic Cable was Installed You Could Receive Money from a Class Action Settlement**

A Settlement has been reached in a class action lawsuit challenging the installation of fiber optic cable within railroad Rights of Way.  Under the Settlement, Sprint or Level 3 (together called the "Defendants") will pay valid claims for landowners in Idaho who own or owned land next to or under railroad Rights of Way where fiber optic cable owned by Sprint or Level 3 is buried.

**Who is Included?**
Class Members include current or previous owners of land next to or under a railroad Right of Way at any time since the cable was installed in the following Counties: Minidoka, Lincoln, Gooding, Elmore, Ada, Canyon, Kootenai, and Bonner.  To find when fiber optic cable was installed in a particular Right of Way, visit www.xxxxxxxx.com.  If you still have questions call 1-800-555-5555.

**What are the Proposed Settlement Terms?**
Class Members who submit a valid claim will receive cash based on factors that include: (a) the length of the Right of Way where the cable is installed, (b) the length of time they owned the property, and (c) whether the Right of Way was created by a federal land grant.  The Settlement provides Defendants with a permanent Telecommunications Easement. The Easement will grant any rights the Defendants don't already have to use the Right of Way for Telecommunications Facilities.

**What are Class Member Rights?**
- If you stay in the Class, you will have an opportunity to claim cash benefits. You can't sue Defendants or the railroads in the future for any claims in this lawsuit, and a Telecommunications Easement will be granted on the railroad Right of Way next to or through your property.  If you think you are a member of the Class, but did not receive a mailed notice, call 1-800-555-5555.

- You can exclude yourself from the Class.  This means you cannot file a claim for cash benefits but will keep the right to sue the Defendants in the future.

- You can object to all or part of the Settlement if you remain in the Class.

- Exclusions and objections must be filed in writing by **Month Date Year**.

**Who Represents Class Members?**
Class Counsel have been appointed by the Court to represent you. Class Counsel will request an award of attorneys' fees up to $426,000, to be paid by Defendants.  If you wish, you or your own attorney may ask to appear and speak at the hearing at your own cost.

**Will an Approval Hearing be Held?**
Yes, a hearing will be held on **Month Date Year**, at the United States Courthouse,
_____.


      **For More Information:**   **Visit www._____.com or call 1-800-000-0000**

8778661.1

# EXHIBIT D

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

# If You Own or Owned Land Under or Next to Railroad Rights of Way In Idaho Where Fiber-Optic Cable was Installed,

## You Could Receive Money from a Class Action Settlement.

| |
|---|
| A right of way is the land over which the railroad operates. |

*A federal Court authorized this notice. This is not a solicitation from a lawyer.*

- A Settlement has been reached in a class action involving land next to or under railroad rights of way where Sprint and Level 3 Communications ("Defendants") have installed Telecommunications Facilities (such as fiber-optic, copper, or coaxial cables for the transmission of voice or data). The Settlement resolves litigation over whether the Defendants had the right to install Telecommunications Facilities within the railroad rights of way without the consent of people who own land next to or under the rights of way.

- The Settlement will pay landowners' claims and provide the Defendants certain telecommunications easement rights in the rights of way.

- Your legal rights are affected whether you act or don't act. Read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THE SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM FORM** | The only way to get a payment. Claim Forms will be mailed after the Court grants final approval to the Settlement. |
| **EXCLUDE YOURSELF FROM THE SETTLEMENT** | Get no money from the Settlement. This is the only option that allows you to ever be part of any other lawsuit against the Defendants about the legal claims in this case. Current landowners avoid giving Defendants an Easement (*see* Questions 17 and 21). |
| **OBJECT** | If you do not exclude yourself, you may write to the Court about why you don't like the Settlement. |
| **GO TO A HEARING** | If you object, you also may ask to speak in Court about the fairness of the Settlement. |
| **DO NOTHING** | Get no payment. Give up rights to ever sue the Defendants or the railroads about the legal claims in this case. Current landowners will be subject to an Easement (*see* Question 17). |

- These rights and options – **and the deadlines to exercise them** – are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the Settlement. Payments will be made if the Court approves the Settlement and after any appeals are resolved. Please be patient.

**Questions? Call 1-800-000-0000 or Visit www._____.com**

| WHAT THIS NOTICE CONTAINS |
|---|

**BASIC INFORMATION** ………………………………………………………………………**PAGE 3**
      1.      Why is there a notice?
      2.      What is this lawsuit about?
      3.      What about the previous settlements?
      4.      Why is this a class action?
      5.      Why is there a Settlement?

**WHO IS IN THE SETTLEMENT** ………….……………………………………………….…**PAGE 4**
      6.      How do I know if I'm part of the Settlement?
      7.      Are there exceptions to being included?
      8.      How do I determine if I'm in the Class?
      9.      What should I do if I move or sell my property?

**THE SETTLEMENT** …………………………………………………………………………**PAGE 5**
      10.     What does the Settlement provide?
      11.     What can I get from the Settlement?
      12.     Why are there different benefit levels?
      13.     What if I did not own my property for the entire time?
      14.     What if I inherited my property?
      15.     What if there are multiple owners of my property?
      16.     Is There Any Other Way to Get Benefits?
      17.     What is the Easement?

**THE CLAIMS PROCESS** ………………….……………………………………………….…**PAGE 8**
      18.     How can I get a payment?
      19.     When will I get my payment?
      20.     What if I disagree with my payment amount?

**EXCLUDING YOURSELF FROM THE SETTLEMENT** ……………………………………….…**PAGE 9**
      21.     How do I get out of the Settlement?
      22.     If I don't exclude myself, can I sue the Defendants for the same thing later?
      23.     If I exclude myself from the Settlement, can I still get a payment?

**THE LAWYERS REPRESENTING YOU** …………………………………………………….…..**PAGE 9**
      24.     Do I have a lawyer in the case?
      25.     How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT** …………………………………………………………**PAGE 10**
      26.     How do I tell the Court what I think about the Settlement?
      27.     What's the difference between objecting to and asking to be excluded?

**THE COURT'S FAIRNESS HEARING** …………………………………………………….…..**PAGE 11**
      28.     When and where will the Court decide whether to approve the Settlement?
      29.     Do I have to come to the hearing?
      30.     May I speak at the hearing?

**IF YOU DO NOTHING** …………….…..……………………………………………….………**PAGE 12**
      31.     What happens if I do nothing at all?

**GETTING MORE INFORMATION** ……………………………………………………………**PAGE 12**
      32.     How do I get more information?

**Questions?  Call 1-800-000-0000 or Visit www._____.com**

## BASIC INFORMATION

### 1. Why is there a notice?

You have a right to know about a proposed Settlement of a class action lawsuit, and about your options, before the Court decides whether to approve the Settlement.

The Court in charge of the case is the United States District Court for the District of Idaho, and the case is called *Koyle v. Level 3 Communications, Inc*, No. 01-0286-S-BLW. The people who sued are called the Plaintiffs, and the companies they sued, Sprint and Level 3 Communications, are called the Defendants.

### 2. What is this lawsuit about?

Beginning in the 1980s, the Defendants or their predecessors buried fiber-optic cable and installed related telecommunications equipment within railroad rights of way across the United States. Defendants did so with the consent of the railroads. The Plaintiffs claim that the Defendants were also required to get consent from adjoining landowners before installing Telecommunications Facilities (such as fiber-optic, copper, or coaxial cables for the transmission of voice or data) in the railroad rights of way.

Railroads have differing levels of property rights in connection with the rights of way. The issue in this litigation is whether the railroads have enough rights to permit the Defendants to put Telecommunications Facilities in the rights of way without getting permission from owners of land next to or under the rights of way.

The Defendants claim the railroads had the right to allow them to install Telecommunications Facilities without the need for further permission from landowners. The Defendants deny they did anything wrong.

### 3. What is the status of the previous settlement?

You may recall seeing an earlier notice in August and September 2008 about a settlement in *Kingsborough v. Sprint Communications* that involved the same claims as this case. The *Kingsborough* court decided it did not have the power to decide whether that settlement should be approved. The parties then negotiated this new settlement and are presenting it to this Court for approval.

### 4. Why is this a class action?

In a class action, one or more people, called class representatives, sue on behalf of people who have similar claims. A judge can determine that people who have similar claims are members of a class, except for those who exclude themselves from the class. U.S. District Judge B. Lynn Winmill in the United States District Court for the District of Idaho is in charge of this class action.

**Questions?  Call 1-800-000-0000 or Visit www._____.com**

3

### 5. Why is there a Settlement?

There has been no trial. Instead, the Plaintiffs and the Defendants agreed to settle to avoid the costs and risks of trial. The Settlement provides the opportunity for payment to Class Members. In exchange, under the Settlement, Class Members give the Defendants an Easement in the railroad right of way. An easement permits a person to use property for a stated purpose. The Easement given through the Settlement will be for Telecommunications Facilities and is described more fully in Question 17.

## WHO IS IN THE SETTLEMENT

To see if you can get money from the Settlement, you first have to determine if you are a Class Member.

### 6. How do I know if I am part of the Settlement?

You are a member of the Settlement Class if you own or co-own (or formerly owned or co-owned) land in the following Counties: Minidoka, Lincoln, Gooding, Elmore, Ada, Canyon, Kootenai, and Bonner that is next to or under a railroad right of way where Telecommunications Facilities have been installed by Sprint and Level 3. This land is referred to as "Covered Property."

### 7. Are there exceptions to being included?

You are not a Class Member if you are:
- A national, state, or local governmental entity,
- A railroad or a railroad-affiliated entity, or
- A Native American nation or tribe.

If you exclude yourself from the Settlement you are also not included in the Class (*see* Question 21).

### 8. How do I determine if I'm in the Settlement Class?

If you received this notice in the mail without requesting it, land records show you may be affected by this case. You can go to www._____.com to see the description of the rights of way that are included in the Settlement. If you are still not sure if you are in the Settlement Class, you can call 1-800-000-0000 to see if your property is included in the Settlement.

### 9. What should I do if I move or sell my property?

If you move after receiving this notice and before the Settlement if finalized, in order to receive additional important notices, you must call the Claims Administrator at 1-800-000-0000 and give your new address. If you sell your property after receiving this notice and before the Settlement is finalized, you should inform the new owner of your decision whether to remain in the Class or

Questions? Call 1-800-000-0000 or Visit www._____.com

4

to opt out of it because the new owner will be bound by your decision.  You should also call the Claims Administrator and give the name of the new owner.

### THE SETTLEMENT

| 10.   What does the Settlement provide? |
| --- |

A Settlement Agreement, available at the website, at www._____.com, describes the details about the Settlement.  Generally, the Settlement will pay valid claims from Class Members.  Also, as a result of the Settlement, the Defendants' easements will include the right to install and use Telecommunications Facilities, as described in section IV. on page 17 of the Settlement Agreement.

| 11.   What can I get from the Settlement? |
| --- |

The Settlement will provide cash payments to those who qualify.  The amount of your payment will be based on the length of fiber-optic cable on your property, according to the formulas below. **You do not need to know how to use these formulas.  Your payment will be determined for you at a later date.**  This information is provided to you to help you understand the potential value of the Settlement.

Your payment will depend on a number of factors, including:

- How many feet of property you own next to the railroad right of way,
- How long you owned the property,
- How the railroad got its property rights, and
- How many people co-own the property with you.

| BENEFIT LEVELS—PAYMENT FORMULAS |
| --- |

There are four different formulas.  In calculating your benefit it is important to know whether your property is in a Land Grant Corridor.  If you received this notice in the mail, without requesting it, you can find this information on the front of the envelope.  You can also go to www._____.com to see whether your property is in a Land Grant Corridor.  If you are still not sure, you can call 1-800-000-0000.  The documents that must be submitted for each benefit level are described in the Claim Forms that will be distributed to Class Members if the Court approves the Settlement.

**State Benefits** – If your property is included in the Settlement but is **not** located in a Land Grant Corridor, you are eligible to receive State Benefits.
- If you owned the property for the entire Compensation Period, your payment would be $2.28 per foot.

**Pre-1875 Land Grant Non-Section Benefits** – If your property is in a Pre-1875 Settlement Non-Section Corridor, you have two benefit options:

**Questions?  Call 1-800-000-0000 or Visit www._____.com**

5

- **Pre-1875 Land Grant Non-Section** – If you owned the property for the entire Compensation Period, your payment would be $.26 per foot.
- **State Benefits** – You can try and get a larger payment if you can prove that an earlier owner of your property obtained rights to it before the railroad got its right to use the property for railroad purposes. If you owned the property for the entire Compensation Period, your payment would be $2.28 per foot.

**Pre-1875 Federal Land Grant Section Benefits** - If your property is in a Pre-1875 Settlement Section Corridor, you have two benefit options:
- **Pre-1875 Land Grant Section** – If you owned the property for the entire Compensation Period, your payment would be $.13 per foot.
- **State Benefits** – You can try and get a larger payment if you can show that an earlier owner of your property obtained rights to it before the railroad got its right to use the property for railroad purposes. If you owned the property for the entire Compensation Period, your payment would be $2.28 per foot.

**1875 Federal Land Grant Benefits** - If your property is in an 1875 Settlement Corridor, you have two benefit options:
- **1875 Land Grant** – If you owned the property for the entire Compensation Period, your payment would be $1.25 per foot.
- **State Benefits** – You can try and get a larger payment if you can show that an earlier owner of your property obtained rights to it before the railroad got its right to use the property for railroad purposes. If you owned the property for the entire Compensation Period, your payment would be $2.28 per foot.

| **12. Why are there different benefit levels?** |
| --- |

Over time, railroads acquired land in different ways. How broad a railroad's property rights are depends on how it got the land for its tracks and when it got the rights. The broader the railroad's property rights, the less likely it is that the Defendant telecommunications company needed permission from adjoining landowners to install its fiber-optic cable.

In the Settlement, the Defendants pay landowners different amounts depending on how and when the railroad got its property rights because these factors affect how broad or narrow the railroad's rights are.

| **13. What if I did not own my property for the entire time?** |
| --- |

In some instances, a property has current and former owners. Your payment would be based on the proportionate period of your ownership during the Compensation Period. The start of the Compensation Period varies. You can find the start of the Compensation Period for the right of way next to your property at www._____.com.

The Compensation Period ends 60 days after the "Effective Date." The Effective Date is the later of: (1) the date on which the Settlement becomes final; (2) the date on which an order awarding attorneys' fees becomes final (*see* Question 25); and (3) the date on which all periods during which any parties to the Settlement Agreement may exercise a right of withdrawal has expired. See the Settlement Agreement at www._____.com for more details.

**Questions? Call 1-800-000-0000 or Visit www._____.com**

## 14. What if I inherited my property?

If you inherited your property, along with any property-based claims that were owned by your deceased relative, you will be able to count any period of ownership by your deceased relative. For example, if you owned the property for 12 months and your relative owned the property for 24 months during the Compensation Period your payment will be based on 36 months. Please note you will need to provide the Claims Administrator with a personal representative's deed or beneficiary's deed showing you acquired your property by inheritance. You will also need to provide a deed or certificate of title that reflects your relative's acquisition of the property.

## 15. What if there are multiple owners of my property?

If you file a valid claim, the Claims Administrator will write a single check payable to all co-owners of the property. The check will be mailed in care of the person to whom this Notice was mailed.

If your ownership of the Covered Property has changed during the Compensation Period, then each owner or group of co-owners (including estates) must submit a separate Claim Form for each period of ownership. Ownership may change, for example, through a transfer between family members, by or to a related corporation, or to a trust, or through the addition or deletion of co-owners.

## 16. What am I giving up to stay in the Class?

Unless you exclude yourself from the Settlement (*see* Question 21), you can't sue, continue to sue, or be part of any other lawsuit against the Defendants or the railroads to obtain any recovery as a result of a Defendant putting fiber optic cable in the right of way next to your property. It also means that all of the Court's decisions will bind you. In addition, if you are a current landowner, as a condition of payment, you will be required to submit a signed Easement (*see* Question 17).

## 17. What is the Easement?

The lawsuit is about whether Defendants received from the railroads sufficient rights to use the railroad right of way next to your property for Telecommunications Facilities. That issue has not been resolved. The Easement will grant any rights the Defendants don't already have to use the right of way for Telecommunications Facilities. It will be granted to the Defendants that have already placed Telecommunications Facilities in the applicable right of way. The right of way usually extends a significant distance on either side of the railroad tracks. The Easement will:

- Cover a portion of the right of way adjoining your property, encompassing where the existing Telecommunications Facilities are buried or located,
- Allow the Defendants, if they don't already have the right to do so, to maintain, operate, repair, and relocate existing Telecommunications Facilities and to install additional Telecommunications Facilities within the Easement area,

**Questions? Call 1-800-000-0000 or Visit www._____.com**

7

- Allow the Defendants access to the right of way by using existing private roads when access from public or railroad roads or the adjoining right of way is not practical,
- **Not** allow the Defendants to add or substantially expand buildings on the right of way, and
- **Not** allow the Defendants to add microwave or cell towers.

You can read and download the Easement Deed at www._____.com or call 1-800-000-0000 to request a copy. You should not sign the Easement Deed now. Instead, the Easement Deed forms will be distributed to Class Members after the Court has approved the Settlement and a valid claim is made.

**Note:** If you are a current landowner and do not exclude yourself from the Settlement you will automatically grant an Easement in the railroad right of way next to your land. The Court will authorize the Claims Administrator to sign an Easement Deed on your behalf if you do not sign the Easement Deed.

### THE CLAIMS PROCESS

### 18. How can I get a payment?

You don't have to do anything now. If the Settlement receives final approval, Class Members who received this notice in the mail will receive a Claim Form automatically. You can view the different Claim Forms at the website. Please note that you will not be able to submit a claim until after the Court grants final approval to the Settlement.

When you receive your Claim Form, you will need to complete it and supply the Claims Administrator with proof of your ownership of each parcel of property. There may be additional required documents based on the Level of Benefits you are applying for. Please carefully read the Claim Forms. If you still have questions about documentation requirements, you can call 1-800-000-0000.

### 19. When will I get my payment?

The Court will hold a hearing on **Month 00, 2011** to decide whether to give final approval to the Settlement (*see* Question 28). If the Court approves the Settlement, anyone in the Claims Administrator's database will be sent a Claim Form to complete and return to the Claims Administrator. After your claim is received, the Claims Administrator will determine if you qualify for payment. If you do, the Claims Administrator will send a Release of Claims to you as well as an Easement Deed to current landowners.

An appeal after the Court approves the Settlement may cause additional time delays. Claim Forms will not be distributed and payments will not be made while an appeal is pending. The amount of time an appeal takes is always uncertain, but can be more than a year. Please check the website periodically for updates on this case.

**Questions? Call 1-800-000-0000 or Visit www._____.com**

**20.  What if I disagree with the amount of my payment?**

There is a process in the Settlement to resolve disagreements over whether you are eligible.  If you file a claim you will get further details in the letter you receive about your eligibility.  You have the right to ask the Claims Administrator to reconsider the decision on your claim.  Please review the letter carefully when you receive it because there are specific time limitations regarding the reconsideration process.  More details are available in the Settlement Agreement, which is available at www._____.com.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want a payment from the Settlement, and you want to keep the right to sue or continue to sue the Defendants or the railroads on your own about the issues in this case, then you must take steps to get out.  This is called excluding yourself – or is sometimes referred to as opting out of the Class.  This is the only way to avoid giving an Easement to the Defendants (*see* Question 17).

**21.  How do I get out of the Settlement?**

To exclude yourself from the Settlement, you must send a letter that includes the following:
- Your name and address,
- The names and current addresses of any co-owners of land you own or owned next to or under a railroad right of way,
- A statement saying that you want to be excluded from the Settlement Class,
- The legal description contained in the deed to your land or other description and address of the land that is next to or under a railroad right of way, including your estimate, if possible, of the length (in feet) of the right of way next to your land, and
- Your signature.

You must mail your exclusion request, postmarked no later than **Month 00, 2011**, to:

Fiber-Optic Cable Litigation Exclusions
P.O. Box **0000**
City, MN 00000-0000

**22.  If I don't exclude myself, can I sue the Defendants for the same thing later?**

No.  Unless you exclude yourself, you give up the right to sue the Defendants or the railroads for the claims that the Settlement resolves.  If you have a pending lawsuit, speak to your lawyer in that lawsuit immediately.  You must exclude yourself from this Class to continue your own lawsuit.

**23.  If I exclude myself from the Settlement, can I still get a payment?**

No.  You will not get any money if you exclude yourself from the Settlement.  If you exclude yourself from the Settlement, do not send in a Claim Form asking for benefits.

**Questions?  Call 1-800-000-0000 or Visit www._____.com**

**THE LAWYERS REPRESENTING YOU**

| **24. Do I have a lawyer in the case?** |
|---|

Yes.  The Court has appointed the lawyers and firms listed below as "Class Counsel," meaning that they were appointed to represent you and all Class Members:

| | |
|---|---|
| Nels Ackerson<br>ACKERSON KAUFFMAN FEX, P.C.<br>1250 H Street, NW, Suite 850<br>Washington, DC 20005 | Henry J. Price<br>PRICE, WAICUKAUSKI & RILEY, LLC<br>301 Massachusetts Avenue<br>Indianapolis, IN 46204 |
| Kathleen C. Kauffman<br>ACKERSON KAUFFMAN FEX, P.C.<br>1250 H Street, NW, Suite 850<br>Washington, DC 20005 | Dan Millea<br>ZELLE, HOFMANN, VOELBEL,<br> MASON LLP<br>500 Washington Avenue South, Suite 4000<br>Minneapolis, MN 55415 |
| Irwin B. Levin<br>COHEN & MALAD, LLP<br>One Indiana Square, Suite 1400<br>Indianapolis, IN 46204 | Andrew W.  Cohen<br>KOONZ, MCKENNEY, JOHNSON,<br>DEPAOLIS & LIGHTFOOT, L.L.P.<br>2001 Pennsylvania Avenue, N.W.<br>Suite 450<br>Washington, DC 20006 |
| Scott D. Gilchrist<br>COHEN & MALAD, LLP<br>One Indiana Square, Suite 1400<br>Indianapolis, IN 46204 | Brad P. Miller, ISB No. 3630<br>HAWLEY TROXELL ENNIS & HAWLEY LLP<br>877 Main Street, Suite 1000<br>P.O. Box 1617<br>Boise, ID 83701-1617 |

**[SUBJECT TO APPROVAL OF THE COURT.]**

You will not be charged for these lawyers.  If you want to be represented by your own lawyer, you may hire one at your own expense.

| **25. How will the lawyers be paid?** |
|---|

The Court will decide how much Class Counsel and any other lawyers will be paid.  Class Counsel will ask the Court for attorneys' fees, costs and expenses of $426,000.  Other lawyers may make fee applications.  Class Counsel will also request that amounts ranging from $1,300 to $3,200 be paid to each of the Class Representatives who helped the lawyers on behalf of the whole Class.  The Defendants will separately pay these fees and expenses and the payment will not reduce the benefits available for the Class.

**OBJECTING TO THE SETTLEMENT**

| **26. How do I tell the Court that I don't like the Settlement?** |
|---|

Questions?  Call 1-800-000-0000 or Visit www._____.com

10

If you are a Class Member, you can object to the Settlement or to requests for fees and expenses by Class Counsel or any other lawyers. To object, you must send a letter that includes the following:

- Your name and address,
- The title of the case, *Koyle v. Level 3 Communications, Inc.*, No. 01-0286-S-BLW,
- A statement saying that you object to *Koyle v. Level 3 Communications, Inc.*,
- The reasons you object, and
- Your signature.

Your objection, along with any supporting material you wish to submit, must be mailed and postmarked no later than **Month 00, 2011**, to the following four addresses:

| Claims Administrator | Court |
|---|---|
| Fiber-Optic Cable Litigation<br>P.O. Box 0000<br>City, MN Zip | Clerk of the Court<br>United States District Court<br>United States Courthouse |
| **Class Counsel** | **Defense Counsel** |
| Fiber–Optic Cable Litigation Class Counsel<br>P.O. Box 000<br>Indianapolis, IN 46204 | J. Emmett Logan<br>Stinson Morrison Hecker L.L.P.<br>1201 Walnut #2900<br>Kansas City, MO 64106-2150 |

## 27. What's the difference between objecting and excluding?

Objecting is simply telling the Court that you don't like something about the Settlement. You can object to the Settlement only if you do not exclude yourself from the Settlement. Excluding yourself from the Settlement is telling the Court that you don't want to be part of the Settlement. If you exclude yourself from the Settlement, you have no basis to object to the Settlement because it no longer affects you.

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the Settlement and any requests for fees and expenses. You may attend and, if you have submitted a written objection and a Notice of Intention to Appear, you may ask to speak, but you don't have to.

## 28. When and where will the Court decide whether to approve the Settlement?

The Court will hold a Fairness Hearing at Time x.m. on **Month 00, 2011**, at the United States District Court for the District of Idaho, located at _____. The hearing may be moved to a different date or time without additional notice, so it is a good idea to check www._____.com. At this hearing the Court will consider whether the Settlement is fair, reasonable, and adequate. The Court will also consider how much to pay Class Counsel and Class Representatives. If there are

**Questions? Call 1-800-000-0000 or Visit www._____.com**

objections, the Court will consider them at this time.  After the hearing, the Court will decide whether to approve the Settlement.  We do not know how long these decisions will take.

## 29.  Do I have to come to the hearing?

No.  Class Counsel will answer questions Judge Winmill may have.  But, you may come at your own expense.  If you send an objection, you don't have to come to Court to talk about it.  As long as you mailed your written objection on time, to the proper address, the Court will consider it.  You may also pay your own lawyer to attend, but it's not necessary.

## 30.  May I speak at the hearing?

If you submitted a written objection you may ask the Court for permission to speak at the Fairness Hearing.  To do so, you must send a letter saying that you intend to appear and wish to be heard.  Your Notice of Intention to Appear must include the following:
- Your name and address,
- The title of the case,
- A statement that this is your "Notice of Intention to Appear", and
- Your signature.

You must mail your Notice of Intention to Appear, postmarked no later than **Month 00, 2011**, to the four addresses in Question 26.

## IF YOU DO NOTHING

## 31.  What happens if I do nothing at all?

If you received this notice in the mail, a Claim Form will automatically be mailed to you after the Court grants final approval to the Settlement.  If you do not file a claim, you will not get any money from the Settlement.

## GETTING MORE INFORMATION

## 32.  How do I get more information?

You can visit the website at www._____.com, where you will find answers to common questions about the Settlement and other information to help you determine whether you are a Class Member and whether you are eligible for a payment.  If you still have questions, you can call 1-800-000-0000 toll free or write to Fiber-Optic Cable Litigation, P.O. Box 0000, City, ST 00000-0000.

**Questions?  Call 1-800-000-0000 or Visit www._____.com**

# EXHIBIT E

**If You Own or Owned Land Under or Next to Railroad Rights of Way Where Fiber-Optic Cable was Installed,**

**You Could Receive Money from a Class Action Settlement.**

*Court-Ordered Legal Notice*

**SETTLEMENT ADMINISTRATOR**
**PO BOX 0000**
**CITY, STATE  00000-0000**

PRESORTED
FIRST-CLASS MAIL
U.S. POSTAGE
PAID
RUSTCONSULTING, INC.

## Important Notice About Your Property

[Benefit Level]

NAME
ADDRESS
CITY STATE ZIP CODE

## CERTIFICATE OF SERVICE

I hereby certify that on January 21, 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

| | | |
|---|---|---|
| Joseph E. Jones | - | jjones@fslf.com |
| Stephen R. Thomas | - | srt@moffatt.com |
| Tyler J. Anderson | - | tya@moffatt.com |
| William T. Gotfryd | - | wtglawproj@aol.com |
| J. Emmett Logan | - | elogan@stinson.com |

I further certify that the foregoing was served via e-mail to the following non-CM/ECF participants:

| | | |
|---|---|---|
| Irwin B. Levin | - | ilevin@cohenandmalad.com |
| Scott D. Gilchrist | - | sgilchrist@cohenandmalad.com |

/s/Dan Millea
Dan Millea, Attorney for Plaintiffs